**No. 02-176C**
**(Judge Sweeney)**

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROXCO, LTD.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION IN LIMINE

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRIAN M. SIMKIN
Assistant Director

JOHN S. GROAT
Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Telephone: (202) 616-8260
Facsimile: (202) 514-7965

Attorneys for Defendant

OF COUNSEL:

BRYAN O'BOYLE
Senior Trial Attorney
Air Force Legal Services Agency

November 9, 2006

# TABLE OF CONTENTS

Page

DEFENDANT'S MOTION IN LIMINE . . . . . . . . . . 1

MEMORANDUM . . . . . . . . . . 1

PROCEDURAL POSTURE . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 3

I. The Court Has The Power And The Duty To Grant Motions In Limine To Limit The Scope Of Trial In Appropriate Circumstances . . . . . . . 3

II. Federal Rule of Evidence 702 Requires That, To Be Admissible, Any Expert Witness Opinions Must Be Both Reliable And Relevant . . . . . . . . . . 4

III. Expert Testimony Upon A Legal Interpretation Or A Question Of Law Is Not "Helpful" To The Court Or Admissible . . . . . . . . . . 6

IV. The Pearson's Report's Legal Conclusion That The Government Had A Continuing Obligation To Accept Or To Reject Roxco's Work Is Incorrect As A Matter Of Law And The Report Should Be Excluded Upon That Basis . . . . . . . . . . 7

V. The Pearson's Report's Legal Conclusion That The Contract Obligated The Government To Inspect And To Accept Buildings In The Absence Of The Proffer Of A Manufacture's Warranty Is Incorrect As A Matter Of Law And The Report Should Be Excluded Upon That Basis . . . . . . . . . . 11

VI. The Pearson Report's Legal Conclusion That The Contract Specifications Permitting The Use Of Grade 3 Lumber Relieved Roxco From Its Contractual Obligation to Comply With the Contract Specifications Regarding Dimensional Tolerances Is Erroneous As A Matter Of Law . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . 20

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Atlas Corp. v. United States,
895 F.2d 745 (Fed. Cir. 1990) . . . . . 11

Baltimore & Ohio R.R. Co. v. United States,
261 U.S. 592 (1923) . . . . . 20

Bar Ray Products, Inc. v. United States,
162 Ct. Cl. 836 (1963) . . . . . 15

Baskett v. United States,
2 Cl. Ct. 356 (1983) . . . . . 3,4

Blake Constr. Co., Inc. v. United States,
220 Ct. Cl. 56, 597 F.2d 1357 (1979) . . . . . 19

Blake Constr. Co. v. United States,
987 F.2d 743 (Fed. Cir. 1993) . . . . . 7, 17, 19

Bourjaily v. United States,
483 U.S. 171 (1987) . . . . . 5

Cascade Pac. Int'l v. United States,
773 F.2d 287 (Fed. Cir.1985) . . . . . 19

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
509 U.S. 579 (1993) . . . . . 5, 6

Dreadnought Marine, Inc., ASBCA 45055,
95-2 BCA 27 . . . . . 15

Dynamics Corp. of Am. v. United States,
17 Cl. Ct. 60 (1989) . . . . . 7, 8

Granite Constr. Co. v. United States,
962 F.2d 998 (Fed. Cir.1992) . . . . . 19

Greco v. Department of the Army,
852 F.2d 558 (Fed. Cir. 1988) . . . . . 7

Hercules. Inc. v. United States,
516 U.S. 417 (1996) . . . . . . . . . . 20

ITT Fed. Support Servs. v. United States,
209 Ct. Cl. 157, 531 F.2d 522 (1976) . . . . . . . . . . 11

J.L. Simmons Co. v. United States,
188 Ct. Cl. 684, 412 F.2d 1360, (1969) . . . . . . . . . . 17

Joy v. Bell Helicopter Textron, Inc.,
999 F.2d 549 (D.C. Cir. 1993) . . . . . . . . . . 5, 6

Kumho Tire Co. v. Carmichael,
526 U.S. 137 (1999) . . . . . . . . . . 5, 6

Lithuanian Commerce Corp. v. Sara Lee Hosiery,
179 F.R.D. 450 (D.N.J. 1998) . . . . . . . . . . 5

M.C.& D. Capital Corp. v. United States,
948 F.2d 1251 (Fed. Cir. 1991) . . . . . . . . . . 12, 15

Masters v. Hesston Corp.,
291 F.3d 985 (7th Cir. 2002) . . . . . . . . . . 5

Ordnance Parts & Engineering Co., ASBCA No. 40293,
90-3 BCA ¶ 23,141 . . . . . . . . . . 15

Otis v. Doctor's Assocs., Inc.,
1998 WL 673595 (N.D. Ill. Sept. 14, 1998) . . . . . . . . . . 5

PCL Constr. Services, Inc. v. United States,
47 Fed. Cl. 745 (2000) . . . . . . . . . . 7

Palmerin v. City of Riverside,
794 F.2d 1409 (9th Cir. 1986) . . . . . . . . . . 3

Peters v. United States,
694 F.2d 687 (Fed. Cir. 1982) . . . . . . . . . . 19

Ralph Larsen & Son, Inc. v. United States,
17 Cl. Ct. 39 (1989) . . . . . . . . . . 7

Ralston v. Smith & Nephew Richards, Inc.,
275 F.3d 965 (10th Cir. 2001) . . . . . . . . . . 5

Red Circle Corp. v. United States,
185 Ct. Cl. 1, 398 F.2d 836 (1968) . . . . . . . . . . 10

Rosendin Electric, Inc. ASBCA No. 22996,
81-1 BCA ¶ 14,827 . . . . . . . . . . 10

Rumsfeld v. United Technologies Corp.,
315 F.3d 1361 (Fed. Cir. 2003) . . . . . . . . . . 6

Russell R. Gannon Co. v. United States,
189 Ct. Cl. 328, 417 F.2d 1356(1969) . . . . . . . . . . 10

Trauma Serv. Group v. United States,
104 F.3d 1321 (Fed. Cir.1997) . . . . . . . . . . 11

White Mountain Apache Tribe of Az. v. United States,
10 Cl. Ct. 115 (1986) . . . . . . . . . . 3

## STATUTES, RULES AND REGULATIONS

FAR 52.246-12 . . . . . . . . . . 9

FAR 52.236-11 . . . . . . . . . . 9

Fed. R. Evid. 702 . . . . . . . . . . 4

RCFC 16 . . . . . . . . . . 3,4

## MISCELLANEOUS

3 J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 702[02] . . . . . . . . . . 5

1 J. Strong, McCormick on Evidence § 12, at 50 (4th ed. 1992) . . . . . . . . . . 7

## APPENDIX

1. Excerpts from Pearson report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2. Excerpts from contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

3. September 11, 1987 letter (Roxco) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 147

4. September 12, 1987 letter Roxco) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 148

5. September 12, 1987 letter (Harris) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 149

6. November 30, 1987 warranty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 150

7. January 4, 1998 letter (Gillum) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 151

8. Deposition of David Pearson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 157

9. Settlement agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 214

10. April 8, 1997 letter (Senergy) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 221

11. April 11, 1997 letter (Senergy) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 224

12. December 5, 1997 letter (Roxco) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 225

13. March 28, 1997 memorandum (Roxco) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 226

14. Pearson Report (excerpts) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 228

15. Warranty (Senergy) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 231

16. Building turnover information (No. 2579) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 232

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROXCO, LTD. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-176C |
| | ) | (Judge Sweeney) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION IN LIMINE

Defendant respectfully requests the Court to enter an order in limine precluding plaintiff, Roxco, Ltd. ("Roxco"), from introducing into evidence at trial the April 14, 2006 expert report Roxco has prepared and has proffered to the Government upon the basis that the report both reflects and relies upon three incorrect conclusions of law regarding contract interpretation. In support of this motion, we rely upon the memorandum which follows, with appendix.[1]

PROCEDURAL POSTURE

The Court's March 29, 2004 decision reported at 60 Fed. Cl. 39 sets forth the procedural posture of the case and reflects the parties' Consolidated Statement of Uncontroverted Facts both relevant generally to the case and to the Government's motion for summary judgment. Since the preparation of that statement and issuance of that decision, the parties have completed both expert and fact discovery.

[1] Because Roxco included mention of its claim to the contract balance in its amended complaint, we intend to file a motion to dismiss that claim concurrently.

The Government now requests an order in limine precluding Roxco from introducing into evidence at trial the April 14, 2006 report prepared by Messrs. David Pearson and Jeffery Montroy of Pearson Construction Management, Ltd. ("the Pearson report"), [2] excerpts of which report are reproduced in the appendix ("A") at pages 1-84. The report does not limit itself to an analysis of the delay and construction issues, but makes and relies upon various legal conclusions regarding the parties' respective contractual duties. As a basis upon which to exclude the Pearson report, we demonstrate below that this report first makes and the relies upon three incorrect conclusions of law.[3]

Because these three legal issues potentially are determinative of the admissibility of the report and its conclusions at trial, the Court should rule upon the issue at this juncture. Assuming the Government is correct as to any of the three legal issues, portions of the Pearson report and its analysis are obviously incorrect and should not be admitted into evidence. Deferring consideration of this issue for trial would require the parties at trial to address these three issues for the first time, then, assuming that the Court sustains any of the Government's arguments, to address which portions of the Pearson analysis and report either reflect or rely upon incorrect legal conclusions. Based upon the

---

[2] Although Both Mr. Pearson and Mr. Montroy signed the report, Roxco has identified Mr. Pearson as the sole expert to testify and, for that reason, the Government has deposed solely Mr. Pearson.

[3] The three objections we now raise as a basis upon which for the Court to exclude the report are not inclusive. After the Court rules upon this motion, we anticipating setting forth other objections to the introduction of the report in filings pursuant to other pretrial filing pursuant to Appendix A. These other objections, however, potentially raise factual issues that may be controverted.

Government's analysis of Pearson's work papers and analysis of the testimony of Mr. Pearson, the Pearson report reflects an analysis of a database of approximately 19,000 lines items printed on 380 pages; addressing the impact of the legal issues we raise at trial for the first time obviously may protract the proceedings.

Given the current posture of the case, the Government respectfully submits that, should the Court grant the Government's motion in whole or in part, the Court may wish to permit Roxco to proffer a redacted copy of the Pearson report, excluding both the erroneous legal conclusion and all findings based upon those erroneous conclusions.

## ARGUMENT

### I. The Court Has The Power And The Duty To Grant Motions In Limine To Limit The Scope Of Trial In Appropriate Circumstances

This Court has acknowledged that "[a] motion in limine is a recognized method under [RCFC] 16 and Fed. R. Civ. P. 16 for obtaining a pretrial order simplifying issues for tria,." White Mountain Apache Tribe of Az. v. United States, 10 Cl. Ct. 115, 116 (1986), and "is a useful tool to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters." Baskett v. United States, 2 Cl. Ct. 356, 367-68 (1983); see Palmerin v. City of Riverside, 794 F.2d 1409, 1413 (9th Cir. 1986) (motion in limine is useful to "resolve issues which would otherwise 'clutter up' the trial"). In fact, as this Court has previously acknowledged, the Court has a duty to exercise its power to exclude testimony or evidence in appropriate cases:

> There is no question under [RCFC] 16, that this court, as a trial court, has the power to issue pretrial orders simplifying

> issues for trial. Not only does this court have such power, it has a duty to exercise it in appropriate cases. This power allows the court, *inter alia*, to define the issues, facts, and theories actually in contention and to weed out extraneous issues. Too, this court also has the authority to issue pretrial rulings concerning the admissibility at trial of proposed testimony and documentary evidence.

Baskett, 2 Cl. Ct. at 359 (emphasis added).

II. Federal Rule of Evidence 702 Requires That, To Be Admissible, Any Expert Witness Opinions Must Be Both Reliable And Relevant

Federal Rule of Evidence ("FRE") 702, as amended in 2000, provides that expert witness testimony is admissible only if the proposed expert witness is qualified as an expert "by knowledge, skill, experience, training, or education" and, further, if the testimony of the proposed expert satisfies the other requirements of the rule:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

FRE 702 imposes upon the Court a special "gatekeeping obligation" to prevent the introduction of certain expert testimony that is irrelevant or unreliable. See, e.g., Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999); Joy v. Bell Helicopter Textron, Inc., 999 F.2d 549, 569 (D.C. Cir. 1993); see also 3 J. Weinstein & M. Berger, Weinstein's

Evidence, ¶ 702[02] ("[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful"). Specifically, the Supreme Court's decisions in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Kumho Tire, 526 U.S. 137 (1999), require "judges to determine that scientific testimony," as well as technical or other specialized expert testimony, "offered under Federal Rule of Evidence 702 is both relevant and reliable." Masters v. Hesston Corp., 291 F.3d 985, 991 (7th Cir. 2002). Further, the party proposing to introduce expert opinion "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Advisory Committee Notes, 2000 Amendments, Fed. R. Evid. 702 (citing Bourjaily v. United States, 483 U.S. 171 (1987)); see Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970 n.4 (10th Cir. 2001) (citing cases); see Lithuanian Commerce Corp. v. Sara Lee Hosiery, 179 F.R.D. 450, 457 (D.N.J. 1998); Otis v. Doctor's Assocs., Inc., 1998 WL 673595, at *4 (N.D. Ill. Sept. 14, 1998).

Further, the Supreme Court specifically has rejected the familiar refrain that it has sufficient safeguards against irrelevant or unreliable expert testimony in the opponent's ability to present its own expert testimony or to cross-examine each other's experts at trial. Daubert, 509 U.S. at 596; see Joy v. Bell Helicopter Textron, Inc., 999 F.2d 549, 569 (D.C. Cir. 1993) (rejecting "'let it all in' philosophy" of expert testimony). The Supreme Court requires Federal courts to exercise greater care to prevent the admission of unreliable or irrelevant expert opinion because "Federal Rules of Evidence 702 and 703 grant expert witnesses testimonial latitude unavailable to other witnesses on the

'assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.'" Kumho Tire, 526 U.S. at 138 (quoting Daubert, 509 U.S. at 592).

## III. Expert Testimony Upon A Legal Interpretation Or A Question Of Law Is Not "Helpful" To The Court Or Admissible

The opinion of an expert on legal issue is "irrelevant" and should not be received into evidence. Rumsfeld v. United Technologies Corp., 315 F.3d 1361, 1369 (Fed. Cir. 2003) ("The views of the self-proclaimed CAS experts, including professors of economics and accounting, a former employee of the CAS Board, and a government contracts accounting consultant, as to the proper interpretation of those regulations is simply irrelevant to our interpretive task; such evidence should not be received, much less considered, by the Board on the interpretive issue. That interpretive issue is to be approached like other legal issues-based on briefing and argument by the affected parties."). The Court and not experts retained by the parties is responsible to read and to interpret the contract. For this reason, legal conclusions regarding contract interpretation in the Pearson report are irrelevant and should not be admitted into evidence.

"Regardless of the rule concerning admissibility of opinion upon ultimate facts, courts do not permit opinion on a question of law, unless the issue concerns a question of foreign law." 1 J. Strong, McCormick on Evidence § 12, at 50 (4th ed. 1992). The interpretation of the terms of a contract is an issue of law, the responsibility for which lies with the Court. Blake Constr. Co. v. United States, 987 F.2d 743, 746 (Fed. Cir. 1993)

("The interpretation of a contract provision is an issue of law.") ; accord Greco v. Department of the Army, 852 F.2d 558, 560 (Fed. Cir. 1988). Therefore, the opinion of an expert on the meaning, effect, or intent of a contract provision is inadmissible:

> Plaintiff's allegation, made at the hearing, that expert testimony is required to interpret the specifications is without merit. To accept such an assertion would result in the untenable situation of requiring that every disputed contract be interpreted with expert testimony. Contracts, such as the one at issue here, are not beyond the ability of courts to accurately interpret.

Ralph Larsen & Son, Inc. v. United States, 17 Cl. Ct. 39, 46 (1989); see PCL Constr. Services, Inc. v. United States, 47 Fed. Cl. 745, 785 (2000) ("[t]he subjective, unexpressed intent of one party, or a post-hoc 'interpretation' of what a bidder is said to have believed when entering into a certain type of contract (especially when offered by a third-party 'expert'), is irrelevant for interpreting the contract"); Dynamics Corp. of Am. v. United States, 17 Cl. Ct. 60, 66 (1989) ("the defendant's expert is not charged with the interpretation of the contract," as it "is the role of the court to make that determination").

## IV. The Pearson's Report's Legal Conclusion That The Government Had A Continuing Obligation To Accept Or To Reject Roxco's Work Is Incorrect As A Matter Of Law And The Report Should Be Excluded Upon That Basis

The Court should not permit the introduction into evidence the Pearson report, which both makes assumptions regarding and then relies in part upon the erroneous legal conclusion that the Government had the contractual obligation to inspect and to accept Roxco's work on an a continuing basis.

In addressing building inspection and turnover, the Pearson report correctly states that "[d]uring construction, neither the contracting officer nor the other Government personnel administering the project deemed it appropriate to accept each stage of construction as it was competed." A71 (ROXCO REPORT 0719). "That decision [not to inspect and accept on an continuing basis]," the Pearson reports concludes " caused Roxco to incur significant delays and additional costs," id., for which Roxco now seeks compensation. The Pearson report further relies upon the Government's failure to conduct continuing inspections as a basis upon which it attributes the responsibility to the Government for unspecified delay as the result corrective work Roxco performed. A192-94 (TR138-47).

The Pearson's report's contract interpretation and legal conclusion that the contract obligated the Government to inspect and to accept Roxco's work on a continuing basis is erroneous as a matter of law. The Government's specific contractual rights to inspect Roxco's work, both as performed and upon completion, imposed no corresponding contractual duty upon the Government to accept and to reject that work on a continuing basis, as the Pearson report assumes. Specific contractual provision address inspection, quality control, and procedures for the acceptance of completed work, specifically: Specification 2.3 (Inspection and Testing) , A86-87; 2.7 (Acceptance of Construction), A88-90; 3.1 (Construction Quality Control – General), A90; 3.10 (Completion Inspection), A97; H-809 (Contract Completion Instructions), A99; FAR 52.246-12 (Inspection of Construction (JUL1986)), A100-02; and FAR ¶ 52,236-11 (Use and

Possession Prior to Completion), A103-4. These contractual provisions establish the parties' respective contractual rights and obligations as to inspection and to acceptance.

In brief summary, the specifications provide that Roxco, pursuant to its quality control program, had the duty to monitor the quality of construction and the Government had the right to inspect and to reject Roxco's work prior to the expiration of the contract. Specification 2.3.1 provides that "[i]nspection will be accomplished by the contractor in accordance with the specified quality control program." Specification 2.3.2 provides that the Government will provide notice when the contractor's standard of work does not comply with the contract specifications, but does not establish any requirement to inspect and to accept work on a continuing basis. Specification 2.7 (Acceptance of Construction) provides that "[n]o work shall be accepted without a final inspection;" Specification 2.7.1 (General) provides that the "[c]ontractor shall prepare a preliminary punch list of all work (his own and subcontractors) and shall have items corrected before requesting a final inspection by Government, Specification 2.7.2 (Punch Lists); and Specification 2.7.3 (As Builts) provides that '[a] final . . . inspection will not be scheduled until required as-builts [drawings] have been turned over to the Government." The specifications providing for project construction quality control, specifications 3.1 through 3.11.3, set forth in detail the responsibility of Roxco on a continuing basis to monitor and to insure the quality of construction. Special provision H-809 (Contract Completion Instructions) sets forth the Government's right to inspect completed work prior to the expiration of the contract.

The Pearson report's legal conclusion that the Government had a contractual duty to inspect and to accept work Roxco performed on a continuing basis cannot be reconciled with these contract provisions and is simply erroneous as a matter of law. Roxco had a contractual obligation to conduct continuing inspections of its work pursuant to contract specification 3.10 (Completion Inspection), whereas the Government had the right to conduct a final inspection of Roxco's work prior to acceptance pursuant to contract specification 2.7 (Acceptance of Construction) and Special provision H-809 (Contract Completion Instructions). As a general proposition, moreover, inspections are for the benefit of the Government, not the contractor, and even the failure of the Government to provide for any on going inspection does not relieve the contractor of compliance with all its responsibilities under the contract. Russell R. Gannon Co. v. United States, 189 Ct. Cl. 328, 417 F.2d 1356, 1359 (1969); Red Circle Corp. v. United States, 185 Ct. Cl. 1, 398 F.2d 836, 839-40 (1968); Rosendin Electric, Inc. ASBCA No. 22996, 81-1 BCA ¶ 14,827. No implied contract can exist where there is an express contract "dealing with the same subject." Trauma Serv. Group v. United States, 104 F.3d 1321, 1326 (Fed. Cir.1997); Atlas Corp. v. United States, 895 F.2d 745, 754-55 (Fed. Cir. 1990) (citing ITT Fed. Support Servs. v. United States, 209 Ct. Cl. 157, 531 F.2d 522, 528 n.12 (1976)). The relevant contract specifications here comprehensively address the parties' respective obligations regarding inspection, quality control, and acceptance, and do not obligate the Government in any way to inspect and to accept work Roxco performed on a continuing basis, as the Pearson report incorrectly concludes.

The Court should conclude that the Government had no contractual duty to inspect and to accept Roxco's work on a continuing basis and upon that basis exclude the Pearson report.

V. The Pearson's Reports's Legal Conclusion That The Contract Obligated The Government To Inspect And To Accept Buildings In The Absence Of The Proffer Of A Manufacture's Warranty Is Incorrect As A Matter Of Law And The Report Should Be Excluded Upon That Basis

The Pearson report also improperly and incorrectly concludes that the Government had a contractual obligation to inspect and accept housing units notwithstanding the fact that Roxco had failed to proffer contractually required manufacture warranties for the exterior insulated finish system ("EFIS"). A78-79 (ROXCO REPORT 0726-27)

Pearson's contention that the contract obligated the Government to accept buildings prior to Roxco's proffer of a warranty is erroneous, because, as we demonstrated above, the Government had no contractual obligation whatsoever to inspect and to reject Roxco's work on a continuing basis. The contract, furthermore, specifically required that Roxco provide the Government with a warranty for EFIS installation. Paragraph 1.11 of specification 07245 required Roxco to provide a manufacturer's "standard five-year materials replacement warranty" for the EIFS that Roxco was required to apply to the exterior of the housing units and paragraph 1.07A of contract specification section 07245 also required Roxco to install the EIFS by an applicator "[a]pproved by [the] EIFS manufacturer . . . ." A143. As a matter of law, the Government had no contractual obligation to inspect and accept Roxco EFIS work on a

continuing basis prior to Roxco proffering to the Government the required warranties and the Government was entirely justified in declining to inspect and to accept any buildings, prior to Roxco's proffer of a contractually required warranty. See M.C.& D. Capital Corp. v. United States, 948 F.2d 1251 (Fed. Cir. 1991) (Government entitled to insist upon contractor's proffer of warranty).

The Government had good reason to be concerned regarding a warranty for the EFIS work. Roxco subcontracted with Exterior-Interior Specialties, Inc./Choctaw Ventures, Inc. to apply the EIFS material on the housing units. A214 Roxco declared Exterior-Interior Specialties, Inc./Choctaw Venture, Inc. in default of its subcontract on March 14, 1997, and Roxco filed suit against Exterior-Interior Specialties, Inc./Choctaw Ventures, Inc. and its surety, Nobel Insurance Co., in the United States District Court for the Western District of Louisiana (Shreveport Division), seeking damages under its EIFS application subcontract. A214. Roxco's EIFS applicator subcontractor performed deficient work, e.g. improper caulking, improper sealing of windows and joints, and the installation of warranty voiding materials, that caused the EIFS supplier and manufacturer to refuse to warrant the EIFS. A221. Roxco was required to correct all of the deficient work before it could secure a warranty from its supplier. A224. Roxco's attorney in the litigation with the EIFS application subcontractor and its surety stated to the EIFS surety on January 4, 1998, that "by any reasonable method of measurement, field overhead, general conditions, and other time related expenses being incurred by Roxco are 70% attributable to Exterior-Interior's default." A155. On March 30, 1998, Roxco settled this

litigation, and received a payment of $1,050,000 from the surety. A214. Roxco did receive the necessary warranty on its first housing unit until November 30, 1997. A150. Roxco requested the Air Force accept the unit on December 5, 1997, and the Air Force accepted the unit on December 24, 1997. A225.

The Pearson report concludes that "[d]elays for which the Government bears responsibility include, but are not limited to, the following: . . . 20. The Government's demand that Roxco provide written warranties prior to acceptance of the buildings." A18 (ROXCO REPORT 0127). The Pearson reports attributes 633-days of critical path delay to the Government's unreasonable inspection and acceptance criteria, including delay as the result of warranty inspection, but assigns Roxco responsibility for 15 percent of the delay "to allow for other contractor-caused delays that are concurrent with Government delays." A19 (ROXCO REPORT 0127). The Pearson report does not specifically identify which "other contractor-caused delays" occurred during this period. Of this 633-day delay assigned by Pearson to the Government's allegedly unreasonable inspection and acceptance criteria, Pearson attributes 428 days to the turnover of Building No. 2759, commencing on October 22, 1996, and ending on December 24, 1997. A24 (ROXCO REPORT 0143)

Roxco's own March 28, 1997 memorandum establishes that it was performing EFIS work on building No. 2759, as of that date.

> Now that Jet is here the exterior EFIS punch list work will start on Monday March 31st when the finish coat material hits the site. Exterior/Interior had 25-30 buckets of the finish coat

> material on the jobsite but 75% of the buckets were either hard or out of date and not useable. The 8 good buckets are for the "white" color and we don't use the "white" till we get to 2811, which is the 7th house on the order we are going by. We did expedite sending color samples from the earlier approved color samples to Synergy once we hooked up with Kohler as a material source. We are also expediting delivery of the material to the site.
>
> Exterior/Interior would not send men down to do the exterior punch list 2759. The only time we got a crew down there was Monday March 10th when Gil and I went to Willie Lars, when neither Carlos nor James Leon were on site, and got him to go down. He worked for an hour and it started raining. On Thursday March 6th James Leon, Carlos and Gil were in my office. Carlos said he was not going down to Phase II because he was owed extras for Phase II that he had not been paid for. In a nutshell, Exterior/Interior was unresponsive to doing work on Phase II. This hurt progress on punching out the exteriors of the buildings.

A226. In letters of September 11, 1997, and of September 12, 1997, Roxco sought to have the EFIS manufacturer inspect the buildings and issue the required warranty. A146 & A148. In response to these Roxco letters, Harris Specialty Chemicals in a September 12, 1997 letter advised Roxco that no warranty would be issued until Harris received payment for all materials provided to the project. A148. The EFIS warranty for building 2759 was ultimately issued on November 30, 1997, and the Government then accepted building No. 2579 on December 24, 1997. A228-29, A230, & A232.

As a matter of law, the Government was entirely justified in declining to inspect and to accept building No. 2579 and other buildings in the absence of Roxco's proffer of a contractually required manufacture's warranty. See M.C.& D. Capital Corp. v. United

States, 948 F.2d at 1256 (termination for default sustained, in part, upon the basis of failure to provide a warranty). Revocation of accepted of work must be done within a reasonable time after a latent defect, gross mistake, or fraud is discovered, or could have been discovered with ordinary diligence. See Bar Ray Products, Inc. v. United States, 162 Ct. Cl. 836, 837-38 (1963); Ordnance Parts & Engineering Co., ASBCA No. 40293, 90-3 BCA ¶ 23,141 at 116,186**.** Warranty clauses may be strictly construed, and contracting parties may be limited to those rights set forth in the clauses. Dreadnought Marine, Inc., ASBCA 45055, 95-2 BCA 27,656. Had the Government accepted the building No. 2579 or other building from Roxco in the absence of the contractually required EFIS warranty, the Government potentially would have waived legal rights it might otherwise have had to insist upon strict compliance with the contract specifications. The contract as a matter of law did not require the Government to accept building No. 2579 prior to Roxco's proffer of a manufacturer's warranty as the Pearson report concludes.

The Court should hold that the Government had no contractual duty to inspect and to accept Roxco's work on building No. 2579 or other building until Roxco proffered a manufacture's warranty and exclude the Pearson report upon that basis.

VI. The Pearson Report's Legal Conclusion That The Contract Specifications Permitting The Use Of Grade 3 Lumber Relieved Roxco From Its Contractual Obligation to Comply With the Contract Specifications Regarding Dimensional Tolerances Is Erroneous As A Matter Of Law

The Court should not permit the introduction into evidence of the Pearson report which rests upon that erroneous legal conclusion that, because the contract specifications permitted the use of grade 3 lumber for framing, the Government could not require compliance with the contract's dimensional specifications for framing.

Contract Section 06100, Specification 2.2.1 (Framing Lumber), specified the minimum grade of various types of lumber which could be utilized for framing and contract specification 3.3 ( Erection Tolerances) required that the framing be completed to certain specific tolerances. A110 & A118. Because these contract specifications provided Roxco discretion how to proceed, these are performance specifications. Design specifications "describe in precise detail the materials to be employed and the manner in which the work is to be performed. They afford no discretion to the contractor, which is required to follow them as one would a roadmap." Blake Constr. Co., Inc. v. United States, 987 F.2d 743, 745 (Fed. Cir. 1993) (quoting J.L. Simmons Co. v. United States, 188 Ct. Cl. 684, 689, 412 F.2d 1360, 1362 (1969)). In contrast, performance specifications, as here, "set forth an objective or standard to be achieved [by the contractor who is] expected to exercise his ingenuity in achieving that objective or standard of performance, selecting the means and assuming a corresponding responsibility for that selection." Blake Constr., 987 F.2d at 745 (internal quotations and citations omitted).

In preparing its analysis of the compensation Roxco is allegedly entitled to receive, the Pearson report simply concludes that, because the contract specification 2.2.1 permitted the use of grade 3 lumber, the Government was not entitled to compliance with the contract performance specification 3.3 as to tolerances. A27 (ROXCOREPORT 0288) ("There was certainly a conflict between what the Government demanded in terms of framing tolerances and what could be achieved using the lumber grade specified in the contract documents."). Mr. Person testified that the contract specification 2.2.1 permitted the use of grade 3 number "sends a message to a builder that this is low cost, this is a very low priced facility. This is not an important -- we ain't going to check things closely.") . A204 (TR 189) Upon this basis, the Pearson report concludes the Roxco is entitled to relief upon the basis of the fact that the Government's inspectors insisted upon Roxco's actual compliance with the contract specifications. A208 (TR 204) ("Q. Is it your contention that the government inspectors were requiring dimensions not set forth in the plans and specifications? A. No, sir. They were -- it's my opinion that they were demanding exact compliance with the specifications as opposed to substantial compliance with the specifications."). Mr. Pearson testified that the dimensional specification specified were typical for residential construction. A207 (TR 199) ( "The specifications are typical specifications for residential housing? A. Yes."). According to Mr. Pearson, "[t]he evidence demonstrates that the government zealously held Roxco to not just substantial compliance with tolerances, but with actual compliance with tolerances." A205 (TR 191). Asked to assess the impact of the Government insistence upon

compliance with the specification, Person testified that the impact was very substantial and could not be quantified. A205 (TR 191-92 )("Now, the problems that Roxco experienced regards to lumber, what percentage of those problems are attributable to what you characterize as dimensional framing? A. Tons of it. . . ." "What percentage of the costs here are attributable to the government's provision permitting the use of No. 3 lumber? Can that be quantified? A. No. I can't -- I can't separate the cost of each one of these issues separately. Just the cost records won't allow it to be done. But what we can do is see the enormous amounts of money that were spent . . . ."). Upon this basis, the Pearson report concludes that Roxco is entitled to relief, both as to time and compensation.

The Pearson report's legal conclusion that the Government was not entitled to insist upon compliance with the contract specification 3.3 is both inadmissible and incorrect as a matter of law. "[T]he government generally has the right to insist on performance in strict compliance with the contract specifications and may require a contractor to correct nonconforming work." Granite Constr. Co. v. United States, 962 F.2d 998, 1006-07 (Fed. Cir.1992); Cascade Pac. Int'l v. United States, 773 F.2d 287, 291 (Fed. Cir.1985). As discussed in Peters v. United States, 694 F.2d 687, 695 (Fed. Cir. 1982), the rule requiring strict compliance with the Government's specifications is necessary to insure the integrity of the competitive bidding process. Reading the contract to ignore the specifications regarding dimensions, moreover, would "violate[ ] one of the cardinal principles of contract interpretation, that an interpretation which gives reasonable

meaning to all parts of an instrument is preferred to one which leaves a portion of it useless, inoperative, void, meaningless, or superfluous." Blake Constr. Co., Inc. v. United States, 220 Ct. Cl. 56, 60, 597 F.2d 1357, 1359 (1979) (citation omitted); accord Blake Constr., 987 F.2d at 746-47 ("An interpretation which gives reasonable meaning to all parts of a contract is preferred to one which renders part of it insignificant or useless."). Any implied waiver of the express contractual specifications regarding dimensions would have to be "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties, showing, in the light of the surrounding circumstances, their tacit understanding." Hercules. Inc. v. United States, 516 U.S. 417, 424 (1996) (quoting Baltimore & Ohio R.R. Co. v. United States, 261 U.S. 592, 597 (1923)).

The Pearson report concludes as a matter of law that the contract did not entitle the Government to insist upon compliance with the contract performance specifications as to dimensional tolerances and the, based upon that incorrect premise, makes further conclusions. That underlying legal conclusion regarding an implied waiver of dimensional specifications, however, is completely unsupported by analysis, inadmissable, and incorrect. The Court, and not Pearson, is responsible to read and interpret the contract and Person's conclusion regarding the proper reading of specification 3.3 (Erection Tolerances) is demonstrable incorrect.

## CONCLUSION

For the reasons set forth above, the Court should enter an order in limine precluding plaintiff, Roxco, Ltd. ("Roxco"), from introducing into evidence at trial the April 14, 2006 expert report Roxco has prepared and proffered to the Government.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

/s/ John S. Groat
JOHN S. GROAT
Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 616-8260
Fax (202) 514-7965
jack.groat@usdoj.gov

Of Counsel:

Bryan O'Boyle
Senior Trial Attorney
Air Force Legal Services Agency

November 9, 2006