**No. 02-176C**
**(Judge Sweeney)**

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROXCO, LTD.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE

---

E. STEPHEN WILLIAMS
YOUNGWILLIAMS P.A.
2000 AmSouth Plaza
Post Office Box 23059
Jackson, Mississippi 39225-3059
Telephone: (601)948-6100
Facsimile: (601)355-6136
steve.williams@youngwilliams.com

Attorney for Plaintiff

# TABLE OF CONTENTS

Page

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE . . . . . . . . . . . . 1

PLAINTIFF'S RESPONSE TO DEFENDANT'S ARGUMENT . . . . . . . . . . . . . . . . . . 2

PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION ONE . . . . . . . . . . . . 6

PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TWO . . . . . . . . . . . . . . . 9

PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION THREE . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

### CASES

Blake Construction Company, Inc. v. U.S.,
987 F.2d 743, 746 (Fed.Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Dynamics Corporation of America v. U.S.,
17 Cl.Ct. 60, 66 (Cl.Ct. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Greco v. Department of the Army.
852 F.2d 558, 560 (Fed.Circ. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

M.C.& D. Capital Corp. vs. United States,
948 F.2d 1251 (Fed.Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

PCL Construction Services, Inc. v. U.S.,
47 Cl.Ct. 745, 785 (Cl.Ct. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Ralph Larsen & Son, Inc. v. United States,
17 Cl.Ct. 39, 46 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Rumsfield v. United Technologies Corp.,
315 F.3d 1361, 1369 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Travelers Casualty and Surety of America v. United States,
___ Fed.Cl. ___, 2006 WL 3412262, p. 11 (Fed.Cl. 2006) . . . . . . . . . . . . . . . . . . 13

United States v. Spearin,
248 U.S. 132, 136, 137 (1918) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATUTES, RULES AND REGULATIONS

41 U.S.C. §§ 601, *et seq.* (CDA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

48 C.F.R. §52.236-11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

48 C.F.R. §52.246-12(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ROXCO, LTD.,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **No. 02-176** |
| | ) | **(Judge Sweeney)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant** | ) | |

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S MOTION IN LIMINE**

Like many cases arising under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601, *et seq.* (CDA), this case involves a fairly complex set of facts for a construction project which lasted over 4 years. The contract at issue provided for the construction of 172 new housing units at the Barksdale Air Force Base in Shreveport, Louisiana, for a total contract sum of approximately $18.9 million. Among other things,[1] Roxco's lawsuit appeals the contracting officer's rejection of its claim for an equitable adjustment.

In accordance with the Court's Scheduling Order, on April 14, 2006, Roxco disclosed its Rule 26 expert witness reports to the Government. The report prepared by Pearson Management Group, Inc. (the "Pearson Report") is contained in 3 volumes and independently analyzes 8 major issues involved on this project and critiques the original Request for Equitable Adjustment (REA) submitted by Roxco to the Contracting Officer in March 2001. The report includes 203 pages of text and 191 factual, demonstrative and summarizing exhibits which analyze both the

[1] As amended, Roxco's Complaint seeks an equitable adjustment under the Contract (Count I), breach of contract on the part of the Government (Count II), entitlement to interest and litigation costs (Count III) and reversal of the liquidated damages assessment (Count IV).

causes and the extent of Roxco's entitlement. The Pearson Report includes 2 additional supporting engineer opinions and concludes that Roxco is entitled to recover at least $6,232,543 for Government changes, errors and delays.

In preparing the Pearson Report, its authors reviewed over 100,000 pages of project records. Both the Pearson Report and the experts' testimony will be offered at trial to assist the Court in digesting the voluminous and technical data inherent in disputes of this type. The Government's motion facially seeks the exclusion of the entire Pearson Report, but also suggests that Roxco be allowed to "proffer a redacted copy of the Pearson report, excluding both erroneous legal conclusion and all findings based upon those erroneous conclusions." See Motion in Limine, page 3. As demonstrated below, the Government is entitled to none of the requested relief.

**Argument**

The Government's in limine motion raises three objections to the Pearson Report. Each of the objections challenges a specified section of the Pearson Report. The objections are not supported or even suggested by the cases cited by the Government. The Government dedicates several pages of its motion to establishing the truism that legal opinions by expert witnesses invade the province of the Court and are generally not permissible or admissible. Roxco agrees that, except in very limited circumstances not present in this case, experts are not permitted to give legal opinions. The Government, however, does not follow on by alleging that the Pearson Report actually presents legal opinions.[2] Instead, each objection is premised on the notion that

---

[2] As explained later in this Response, the Government's second objection points to language in the Pearson Report which points out the absence of contractual requirements on a specified subject. This language could conceivably be construed as conveying a legal opinion, but a fair reading of the language shows plainly that the Report is not attempting to argue any legal point.

the sections objected to incorporate incorrect legal assumptions, and that those sections of the Pearson Report should, therefore, be regarded as legal opinions and should be stricken.

It is difficult to envision an expert report in a case such as the present one which does not, at some level, operate on assumptions regarding the obligations of a contract, or, stated differently, legal assumptions. To start with, any expert would have to have some understanding of the contract requirements before he could begin to understand the issues or assess what has gone wrong. In the development of his proof, therefore, the contractor's expert witness necessarily reviews the contract documents and requirements.

Every Contracts Dispute Act plaintiff who alleges a breach of contract clearly makes assumptions regarding the obligations of the contract at issue. Generally speaking, unless the expert believes the contract is being incorrectly read by the plaintiff or the plaintiff's attorney, it would not be unusual for the expert to meld those assumptions together with his own assessment of the contract in coming to his or her conclusions. This does not mean, of course, that the expert is presuming to offer a legal opinion about the proper legal interpretation of the contract.

The task of arguing the correct legal interpretation of the contract belongs to the contractor's attorney. In a typical scenario the experts simply make evaluations and calculations in accordance with the legal theory of the case as explained to them by the contractor's attorney and as informed by his or her own study of the contract. That is precisely the status of the Pearson Report in the present case. In short, the Pearson Report takes cognizance of what the contract says, but it does not attempt to say what the contract means as a matter of law.

The Government does not, and cannot, cite a single case holding that an expert report which operates on, or incorporates, an assumption about the obligations of a contract is tantamount to the offering of a legal opinion by that expert. In part III (pp. 6 - 7) of its motion

the Government presents its case support for this peculiar theory. The cases are, at best, inapposite. The first case is Rumsfield v. United Technologies Corporation, 315 F.3d 1361, 1369 (Fed.Cir. 2003).

Rumsfield presented a dispute about a "cost-plus" contract. The contract specified that the Cost Accounting Standards (CAS) were to be employed to determine which costs were allowable as "material costs". The contractor presented expert testimony to the effect that the Generally Accepted Accounting Principles (GAAP) supplemented CAS and should be utilized to determine material costs. The Third Circuit held simply that the determination of which accounting principles to use was a matter of contract interpretation. It then properly recognized that the expert's testimony that GAAP was the proper set of principles to use amounted to contract interpretation, i.e., a legal chore, and held that the testimony should not have been allowed.

The point of Rumsfield is that the expert was not merely testifying about some quantum of damages he calculated. He was attempting to instruct the Court on the contract's requirements regarding how damages should be calculated. The case does support the Government's argument that expert testimony calculating "allowable costs" should be disallowed merely because the expert operated at some level on a legal assumption when making the calculations.

The next case cited by the Government is Blake Construction Company, Inc. v. U.S., 987 F.2d 743, 746 (Fed.Cir. 1993). The case was apparently cited for the simple proposition that contract interpretation is an issue of law. Blake does not contain an issue of expert testimony.

The next case is Greco v. Department of the Army, 852 F.2d 558, 560 (Fed.Cir. 1988). Greco is cited for the same proposition as Blake. It also does not contain an issue of expert testimony. The next case cited by the Government is Ralph Larsen v. U.S., 17 Cl.Ct. 39, 46

(Cl.Ct. 1989). The plaintiff in Larsen argued that the contract was ambiguous. He attempted to present expert testimony to expressly address the contract specifications and what they required. The Court correctly excluded the testimony, and explained that it would decide the issue of ambiguity without expert testimony. In Larsen the expert did not simply incorporate an underlying assumption regarding what he thought the contract provided. Instead, he tried to directly explain to the Court what the proper contract interpretation should be.

The Government next cited PCL Construction Services, Inc. v. U.S., 47 Cl.Ct. 745, 785 (Cl.Ct. 2000). PCL was cited for the proposition that any testimony, including that of an expert, regarding what a contract bidder believed when he submitted a bid is irrelevant. The Government's quote from PCL is accurate, but it is beside the point. It is not clear to Roxco why the Government cited PCL. The Pearson Report is not submitted to show Roxco's understanding or misunderstanding of the contract at the time it submitted its bid or at any other time. As stated earlier, the Pearson Report shows the amounts of the damages suffered by Roxco and it explains how those damages were the result of design problems and poor choices made by the Government during construction.

The final case cited by the Government is Dynamics Corporation of America v. U.S., 17 Cl.Ct. 60, 66 (Cl.Ct. 1989). The case is cited for the uncontested maxim that an "expert is not charged with interpretation of the contract. . ." In Dynamics the contract at issue contained a provision stating that if Bureau of Labor Standards (BLS) changed its methodology for computing certain expenses, the contract terms would be adjusted accordingly. The BLS made some changes, but an expert witness for the Government testified that the changes did not amount to a change in methodology. The Court heard the testimony and then ruled for the contractor. The opinion contains the language quoted by the Government, but the quoted

language was dictum. The Court simply reached a conclusion different from the one the expert offered. Dynamics is very similar to Larsen. In each case the purpose of the expert testimony was not to quantify damages, but to explain to the Court how it should interpret the contract in order to begin the task of quantifying damages.

The only cases cited by the Government which actually involved a contested issue of expert testimony were Rumsfield, Larsen, and Dynamics. In each of those cases the expert's testimony went directly to the issue of how the contract should be interpreted. None of those cases so much as mentioned the notion that expert conclusions are invalid if they are grounded on underlying assumptions about contract requirements.

The fallacy of the Government's theory is even plainer when properly viewed. In the present case the Government argues that the challenged sections of the Pearson Report should be stricken because they are allegedly premised on incorrect legal conclusions. If, however, the existence of an underlying supposition regarding contract requirements transforms expert reports into legal opinions, the admissibility of such reports would not depend on the correctness or incorrectness of the underlying supposition. All expert reports that contain, or are in any way grounded on, any such supposition would be inadmissible as legal opinion even if all parties (and the Court) agree that the supposition is correct.

The Government's theory is insupportable. The theory is not supported by the cases cited, nor is it supported by the text of the Pearson Report. The specific objections made by the Government will be addressed in turn below.

**Response to Objection One**

In its first objection the Government posits that the Pearson Report offers the legal opinion that the government had an obligation to accept or reject Roxco's work on a continuing

basis.[3] (Government motion, Sec. IV., pp. 7 - 11) The Government's citations to the record do not support the assertion that the Pearson Report offers a legal opinion on that point at all. To support its contention on this point the Government points to two sources, both of which appear in the Appendix to the Government's motion. The first source is language from the Pearson Report, found at page 71 of the Appendix (Bates: ROXCO REPORT 0719) The cited language, in the original, is:

> During construction, neither the contracting officer nor the other Government personnel administering the project deemed it appropriate to accept each stage of construction as it was completed. That decision caused Roxco to incur significant delays and additional costs.

Clearly, nothing in that language comes close to the statement of a legal opinion.

The second source for the Government's assertion on this point is taken from the deposition transcript of David Pearson, one of the principal authors of the Pearson Report. The deposition portion relied upon is found in the Government's Appendix at pages 192 -94. These pages contain pages 138 - 147 of the transcript. A review of the referenced material shows that the Government attorney conducting the examination invited Mr. Pearson's responses to specific questions about interpretation of the Roxco contract. To the extent Mr. Pearson offered any opinion about the contract requirements those opinions were specifically solicited by the Government's attorney. The following questions asked by the Government's attorney are illustrative:

transcript page 139, line 17 (App. 192):

[3] Roxco obviously disagrees with the Government's position concerning the legal requirements of the contract. However, the Government's motion attacking Roxco's expert report is not the place to resolve legal issues of that sort. Those arguments should be left for the Court's decision at or following a trial.

> Q. Okay. Is it -- was it your conclusion in performing this analysis that the government had the contractual obligation to accept work as it was performed?

transcript page 141, line 12 (App. 192):

> Q. Okay. Is it your contention, then, that the government had a contractual obligation to inspect work -- inspect and accept work as it was performed?

transcript page 146, line 9 (App. 194):

> Q. What, if any, contract provision required the government to inspect and accept work after the completion of the particular activity?

transcript page 146, line 22 (App. 194):

> Q. Well, perhaps I can break it down smaller questions. What, if any, contract provision required the government to inspect after every -- after the completion of every step of the construction?

transcript page 147, line 5 (App. 194):

> Q. What, if any, contract term required the air force to accept work after the completion of particular construction activities?

transcript page 147, line 12 (App. 194):

> Q. In the case of a government contract -- in the case of this contract, who had authority to accept work on behalf of the government?

The answers to the quoted questions are too lengthy to reproduce separately in this response, but a cursory review of the transcript will demonstrate that Mr. Pearson was not presuming to speak as an authority on contract interpretation. In some instances he simply answered that he would have to go look for such contract provisions before he could answer. In any event, it is disingenuous at best for the Government to ask these questions at a deposition and then, in the present motion attacking the expert's written report, point to the responsive testimony as proof that the witness is attempting to offer a legal opinion by presuming to interpret a contract particularly when no such opinion is expressed in the report.

Even if there were a sustainable legal theory to support the Government's first objection, the objection fails as a matter of proof. It is plain that the Pearson Report does not presume to instruct the Court on the legal issue of contract interpretation. Roxco believes, and at the proper time its attorneys will argue, that the government should have accepted or rejected Roxco's work on a continuing basis. The Pearson Report, however, contains merely a calculation of damages that should be allowed if the Court is persuaded that Roxco is correct on the point. If the Court ultimately concludes that Roxco is incorrect on that point, that portion of the Pearson Report will simply have no significance. It is clear, though, that the Government has not shown any basis for striking that portion of the report. There is no basis whatsoever for such a result. The Government's first objection is not sustainable and should be rejected.

**Response to Objection Two**

The second objection made by the Government relates to the Pearson Report's examination of damages which flowed from the Government's decision to require Roxco to provide warranties in advance of occupancy. The warranties at issue relate to the exterior insulated finish system commonly referred to as, "EIFS". The contested language is found at page 78 of the Pearson Report. This page carries the Bates stamp, "ROXCOREPORT 0726". Without question, Roxco had the ultimate responsibility of warranting its work, but the contract did not require that the EIFS warranties be perfected in advance of occupancy. In addressing this issue the Pearson Report contains language which points out the absence of any contract requirement for providing EIFS warranties in advance of occupancy.

While the challenged language is indisputably correct, the Government has asserted that the referenced language technically could be regarded as an expression of the expert's view of what the contract did or did not require on the issue of the timing of warranty submittals.

Accordingly, and out of an abundance of caution, Roxco has submitted its Motion for Leave to Substitute seeking leave to substitute a revised page "ROXCOREPORT 0726". The revised page deletes the described language. The revised page is otherwise unchanged. Roxco's position regarding the timing of the warranty submittals is, of course, unchanged. It is plain that the contract does not specify the timing of the submission of warranties, and the Government's decision to require the submittals prior to occupancy was the result of a choice rather than a requirement. This choice caused damages to Roxco, and the Pearson Report properly explains and quantifies those damages. The redacted language was surplusage, and the substantive content and conclusions of the Pearson Report are not modified by the redaction of the stated language.

The Government then goes on to engage in a long discussion of the merits of the EIFS issue and whether the Government was or was not required to accept and begin using the housing units prior to the submittal of EIFS warranties. Because the Government's motion challenges an expert report simply on the basis that the report allegedly contains legal opinions about the timing requirements of the EIFS warranty submittals, the Government's merit discussion of the actual legal requirements of the contract on this point is not germane to the issue raised by its motion. Nonetheless, Roxco feels compelled to make a short response.

The Government concludes, at page 14 of its Motion, that the Government was justified in declining to inspect and accept buildings in the absence of a prior submission of a manufacturer's EIFS warranties. On page 15 of its Motion the Government bases this conclusion on the notion that if it had accepted the buildings prior to the submittal of the EIFS warranties, "the Government potentially would have waived legal rights it might otherwise have had to insist upon strict compliance with the contract specifications." The Government has

mischaracterized Roxco's position on this issue. Roxco is not arguing that the Government had a contractual obligation to make a final acceptance of housing units as they were completed. Instead, Roxco asserts, in explicit accordance with 48 C.F.R. §52.236-11, that the Government had the right to take possession of any completed or partially completed part of the project. The same C.F.R. section expressly provides that the contractor still has the responsibility to fully complete all terms of the contract. In other words the Government could have inspected and accepted housing units as they were completed to the point that they could actually be used for housing, and Roxco would still have the obligation to complete all aspects of the contract including furnishing the EIFS warranties. The Government's contention that it would have "potentially" waived its rights if it had permitted occupancy as the housing units were completed is simply wrong.

The Government relies primarily on M.C.& D. Capital Corp. vs. United States, 948 F.2d 1251 (Fed.Cir. 1992) to support its argument that its rights under the contract would have, or might have, been prejudiced if it had inspected and accepted housing units before the EIFS warranties were provided. (Gov't. Motion, p. 12) The Government has either not read or has misread M.C.& D. M.C.& D. correctly construes 48 C.F.R. §52.236-11 and correctly concludes that under that regulation "government 'possession or use' of the work 'shall not be deemed an acceptance of any work under the contract'". *Id.*, at 1255. M.C.& D. plainly shows that Roxco's position is correct.

Roxco is not arguing that the Government had an absolute duty to inspect, begin using housing units as they were completed, and finally accept each unit despite the fact that the EIFS

warranties had not yet been submitted.[4] Roxco is asserting, however, that the Government had the right to do so, and that its refusal to do so amounted, again, to a choice rather than a requirement of the contract or the law. The Pearson Report merely quantifies the damages that Roxco incurred because of the Government's poor and unnecessary choice. The Pearson Report's conclusions regarding the EIFS warranty issue are limited to critical path analysis and quantification of damages. It is not a statement of legal theory. The Government's second objection should be denied.

**Response to Objection Three**

The Government's third objection relates to the portion of the Pearson Report which addresses the damages which flowed from the contract's conflicting requirements to use grade 2 lumber and grade 3 lumber at the same time. The specific objection is that the Pearson Report presents the legal conclusion that "because the contract specifications permitted the use of grade 3 lumber for framing, the Government could not require compliance with the contract's dimensional specifications for framing." (Gov't brief at p. 16) No such opinion appears in the Report, and the Government does not reveal where in the Report it believes the opinion can be found.

Instead, the Government launches into a discussion of performance specifications and design specifications. The Government glosses over the conflicting lumber grade requirements in the contract, and builds its argument on the novel proposition that since there are variances in the specifications regarding the grade of lumber, the contract should simply be read to give Roxco discretion as to how to proceed. The Government then ignores settled law and makes a

---

[4] Roxco does contend that the Government was contractually obligated to "accept, as promptly as practicable after completion and inspection, all work required by the contract or that portion of the work the Contracting Officer determines can be accepted separately." See 48 C.F.R. §52.246-12(i).

leap in illogic to arrive at the assertion that because the contract "provided Roxco discretion how to proceed, these (lumber grade specifications) are performance specifications." (Gov't Motion, page 16) (emphasis and parentheticals added) This is manifestly incorrect, and the Government cites no authority for its assertion.

In truth, specifications in materials are design specifications, not performance specifications. See, Travelers Casualty and Surety of America vs. United States, ___ Fed.Cl. ___, 2006 WL 3412262, p. 11 (Fed.Cl. 2006)(" 'detailed measurements, tolerances, materials, i.e. elaborate instructions on how to perform the contract' qualify as design specifications.") (emphasis added) In direct contrast to the Government's assertion, quoted above, that performance specifications dictate "how" to proceed, the Travelers opinion explains correctly that "[d]esign specifications dictate the 'how' governing a contractor's task . . .". *id*., at 11 (emphasis added)

The Government has rather blatantly attempted to switch labels for the specifications which provided for the lumber grade. The attempted label switch is important and appears to be calculated. The U.S. Supreme Court has firmly explained that the Government grants a warranty to a contractor when it issues its design specifications. The same is not true for performance specifications. In United States vs. Spearin, 248 U.S. 132, 136 (1918) the Supreme Court explained that "if a contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications."

Spearin goes on to explain that "the insertion of the articles prescribing the character, dimensions, and location of [a project] imported a warranty that if the specifications were complied with the [project] would be adequate." *id*. at 137, see, also, Travelers, *supra*, at 11

(same). The point of the portion of the Pearson Report challenged by the Government's third objection is that the task could not be completed with grade 3 lumber, and that Roxco incurred damages when it had to switch to grade 2 lumber.

Roxco's steadfast contention throughout this proceeding has been that the Government's design specifications were faulty, and that through those faulty design specifications the Government breached its Spearin warranty and caused Roxco damages. That is one of Roxco's legal theories of recovery. The Pearson Report does not make that assertion. Roxco has made that assertion in its certified claim to the contracting officer and, through its lawyer, in its pleadings herein. The Pearson Report simply explains the problems and quantifies the damages which flowed from the Government's breach. The ultimate resolution of whether such a breach occurred will depend on the very fact-intensive trial of this action. It is plain that the Government, in its third objection, has not identified any legal opinion testimony in the Pearson Report. The third objection should be denied.

## Conclusion

The Government's present motion is little more than a 12(b)(6) motion or rule 56 motion disguised as a motion to strike an expert report. The sheer number of outstanding fact issues precludes the present resolution of any questions regarding whether or not the critical path analysis or the damage calculations set out in the Pearson Report should be admitted in evidence. The notion that the Report, or any portion of the Report, should be excluded at this juncture is little more than preposterous. Certainly, the Government has not articulated any legal justification for such a result.

The Government has not only failed to show any authority for the result it seeks, it has positively misstated the law to this Court regarding design and performance specifications and

the distinction between them. The Government, hopefully, will acknowledge its error and withdraw that portion of its motion without involving the Court's time in reviewing that portion of its motion or argument.

For all of the reasons stated above, the Government's motion should be denied in its entirety.

Dated: December 15, 2006.

Respectfully submitted,

ROXCO, LTD

by: __/s/ E. Stephen Williams__
E. Stephen Williams
Mississippi State Bar #7233

YoungWilliams P.A.
2000 AmSouth Plaza
Post Office Box 23059
Jackson, Mississippi 39225-3059
Telephone: (601)948-6100
Facsimile: (601)355-6136
steve.williams@youngwilliams.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of December, 2006, a copy of the foregoing Plaintiff's Response to Defendant's Motion in Limine was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

DATED: December 15, 2006.

______/s/ E. Stephen Williams______