**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ROXCO, LTD.,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **No. 02-176** |
| | ) | **(Judge Sweeney)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant** | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO**
**SUBSTITUTE PAGE OF EXPERT'S REPORT**

Roxco, Ltd. ("Roxco"), through counsel, moves this Court to enter its order permitting Roxco to substitute a redacted page of its expert's report for the original page in that report, and in support shows the following:

1. This case presents an appeal by the contractor, Roxco, of certain final decisions by the contracting officer in a dispute regarding a contract for construction of housing units at Barksdale Air force Base in Shreveport, Louisiana.

1. On April 14, 2006, Roxco submitted the report of its expert, Pearson Management Group, Inc. The expert report is generally referred to in this matter as the "Pearson Report".

2. Under this Court's scheduling Order of February 9, 2006, the deadline for the submission of the plaintiff's expert report was April 14, 2006. The Pearson Report was timely submitted, but no provision for amending the expert's report presently exists.

3. Each page of the Pearson Report is bates stamped. Page ROXCOREPORT 0726 (Pearson Report, p. 78) contains language which points out the absence of any contract

requirement for Roxco to provide certain warranties in advance of occupancy of the housing units by the Air Force. The language is indisputably correct, but Roxco has concluded that the referenced language technically could be regarded as an expression by the expert of its view of what the contract did or did not require on the issue of the timing of warranty submittals, and that the language could, therefore, be considered by the Court as an impermissible expression by the expert of its legal interpretation of a portion of the contract. A copy of the existing page ROXCOREPORT 0726 is attached hereto as exhibit “A”.

4. In order to make it perfectly clear that it is not the intention of Roxco or its expert that the Pearson Report should opine about the proper interpretation of the contract, Roxco should be granted leave to redact the referenced language from ROXCOREPORT 0726, and submit for substitution a new ROXCOREPORT 0726 with the referenced language redacted. The proposed redacted page is attached hereto as exhibit “B”.

5. The proposed substitution does not change the substance or conclusions of the Pearson Report in any manner, nor will it in any manner change any theory of liability or any measure of damages previously presented by Roxco. The Government will suffer no prejudice whatsoever by the page substitution requested.

WHEREFORE, Roxco moves this Court to enter its Order granting Roxco leave to substitute redacted page ROXCOREPORT 0726 (exhibit “B”) for the original page

ROXCOREPORT 0726 (exhibit "A").

Dated: December 15, 2006.

Respectfully submitted,

ROXCO, LTD

by: __/s/ E. Stephen Williams__

E. Stephen Williams
Mississippi State Bar #7223
YoungWilliams P.A.
2000 AmSouth Plaza
Post Office Box 23059
Jackson, Mississippi 39225-3059
Telephone: (601)948-6100
Facsimile: (601)355-6136
steve.williams@youngwilliams.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of December, 2006, a copy of the foregoing Plaintiff's Motion to Substitute Page of Expert's Report was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

DATED: December 15, 2006.

_____/s/ E. Stephen Williams_____

Soon after the July 2, 1998 meeting, the Government resumed the acceptance of buildings, starting with six duplexes and associated garages on August 5, 1998. These were the first buildings accepted since March 11, 1998. The Government's documents provide evidence that the acceptance of buildings had been needlessly delayed for up to five months because of the Government's mistaken belief that the floors were unacceptable.

*Government Would Not Allow Occupancy Without Written Warranties*

As previously stated, the Government's acceptance inspections of the buildings began on October 22, 1996. The Government allowed Roxco and their subcontractors to work to correct deficiencies in the first group of six buildings for several months before the Government on August 1, 1997 informed Roxco that they would not accept any buildings without first being provided with the written warranties required by the contract documents. **(Exhibit 14)** There was no contractual requirement for Roxco to provide warranties in advance of occupancy, and the Government's requirement to do so caused several problems and needless delays to the acceptance of certainly the first group of buildings, and possibly later groups as well.

The specification sections that required product or system warranties did not address the timing of the warranty submittals. The Government had no contractual basis for requiring Roxco to provide specific product warranties prior to occupancy.

The Government went a step further in a letter sent to Roxco on August 15, 1997. **(Exhibit 15)** Not only was the Government going to require written warranties in advance of occupancy, they were also going to require inspections by the manufacturers of the warranted systems and written assurances that the installations had been inspected and were acceptable. These additional requirements were not part of the contract documents and were not part of Roxco's contract. By requiring manufacturer inspections and written assurances, the Government was placing conditions on beneficial occupancy that were not a part of Roxco's contract.

EXHIBIT
tabbies
"A"

Soon after the July 2, 1998 meeting, the Government resumed the acceptance of buildings, starting with six duplexes and associated garages on August 5, 1998. These were the first buildings accepted since March 11, 1998. The Government's documents provide evidence that the acceptance of buildings had been needlessly delayed for up to five months because of the Government's mistaken belief that the floors were unacceptable.

***Government Would Not Allow Occupancy Without Written Warranties***

As previously stated, the Government's acceptance inspections of the buildings began on October 22, 1996. The Government allowed Roxco and their subcontractors to work to correct deficiencies in the first group of six buildings for several months before the Government on August 1, 1997 informed Roxco that they would not accept any buildings without first being provided with the written warranties required by the contract documents. **(Exhibit 14)** The Government's requirement to do so caused several problems and needless delays to the acceptance of certainly the first group of buildings, and possibly later groups as well.

The Government went a step further in a letter sent to Roxco on August 15, 1997. **(Exhibit 15)** Not only was the Government going to require written warranties in advance of occupancy, they were also going to require inspections by the manufacturers of the warranted systems and written assurances that the installations had been inspected and were acceptable.



EXHIBIT
tabbies
"B"