**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ROXCO, LTD.,**<br><br>**Plaintiff**<br><br>**vs.**<br><br><br>**THE UNITED STATES,**<br><br>**Defendant** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **No. 02-176**<br>**(Judge Sweeney)** |

**PLAINTIFF'S SUR-RESPONSE TO DEFENDANT'S**
**<u>REPLY REGARDING DEFENDANT'S MOTION IN LIMINE</u>**

In accordance with this Court's Order of February 6, 2007, the plaintiff submits this further Response in opposition to the defendant's Motion In Limine.

**<u>I. Expert Reports and Hearsay</u>**

In its Reply in support of its Motion In Limine the government raised, for the first time, the notion that the entire report prepared for the plaintiff by Pearson Management Group, Inc. (the "Pearson Report") should be excluded under Rules 702 and 703. This new position is a dramatic departure by the Government from its original argument. The Government's original argument posited only that selected portions of the Pearson Report were objectionable because they incorporated legal theories, and should be excluded because, in the Government's view, those portions of the Pearson Report amounted to opinions about the law. In its Reply the Government did not explain the evolution of its position.

Although the Government cited Rule 702 to support its theory of hearsay exclusion, Rule 702 does not address the admissibility of materials in conjunction with expert testimony. The Rule which governs the admissibility of such materials is Rule 703. An examination of Rule 703

with regard to the admissibility of the Pearson Report should begin with the text of the Rule itself. The Rule addresses the bases for expert testimony, *i.e.*, the facts or data upon which the expert opinion is founded. The pertinent portion of the Rule states:

> Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

This language is the product of a 2000 amendment to the Rule. Prior to the amendment, the Rule merely provided that "the facts or data need not be admissible in evidence" in order for an expert to use those facts and data to form an opinion. As noted in the Advisory Committee Notes to Rule 703, the 2000 amendment was made "to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible <u>simply because</u> the opinion or inference is admitted." (emphasis added) The amendment is clearly meant to explain that facts and data are not automatically admissible "simply because" the expert's testimony was allowed.

It is immediately apparent that the principal concern addressed by the Rule change is a concern that a <u>jury</u> might be unduly influenced by facts or data that are otherwise inadmissible. It is also apparent that the Rule contains no outright ban on the admission of facts and data even if those facts and data are otherwise inadmissible. It is further apparent that the Rule says precisely nothing about expert reports. Rule 703 provides no support for the Government's notion that expert reports are inadmissible.

The Government cited two cases for its position. The first is <u>Westfed Holdings, Inc. v. United States</u>, 55 Ct.Cl. 544, 569 (2003). Unfortunately, it is not clear exactly what the Court in <u>Westfed</u> did. A challenge was mounted to the admission of expert reports on the basis that they contained hearsay. The Court, citing Rule 703, stated only that the expert reports were "not

admissible for the truth of the matters asserted therein." *Id*., at 569. It is not clear from reading the case whether the reports were excluded, or whether they were admitted with the stated caveat. The Court then made the statement quoted by the Government in its Reply, *viz*., "Rule 703 does not permit such materials to be admitted into evidence." As shown above, the Rule contains no such absolute ban. If the Westfed Court believed, and held, that Rule 703 literally "does not permit such materials to be admitted into evidence," then Westfed is wrongly decided. A better reading of Westfed is that the Court understood the proper purpose of an expert report and did not exclude the expert reports but admitted them with the stated caveat.

The second case cited by the Government is a Sixth Circuit case, Engebretsen v. Fairchild Aircraft Corp., 21 F.3d 721, 7228 (6th Cir. 1994). There the Court considered the admissibility of an expert report. The Court pointed out that Rule 702 addressed testimony by experts, and Rule 703 addressed admissibility of materials used by the expert. Oddly, in its Reply the Government quoted only the Engebretsen Court's reference to Rule 702. The language quoted by the Government states the truism that, "Rule 702 permits the admission of expert opinion *testimony*, not opinions contained in documents prepared out of court." The Government dutifully pointed out that the word, "testimony", was emphasized in the original. Unnoted by the Government, the Engebretsen Court then turned its attention to Rule 703. It explained that "Rule 703 merely permits such hearsay, or other inadmissible evidence, upon which an expert relies, to be admitted to explain the basis of the expert's opinion." *Id*., at 729. The Engebretsen Court got it right. The Government's Reply did not.

Properly understood, the admissibility of expert reports is little more than a matter of laying a proper foundation. See, Forward Communications Corp. v. U.S., 221 Ct.Cl. 582, 608 F.2d 458, 511 (Ct.Cl. 1979)(" . . . reports which are prepared to state or to support expert

opinions are not admissible without the preparer being present in court to testify as to his qualifications as an expert and to be cross-examined on the substance, pursuant to Rules 702 and 705."); Tokio Marine & Fire Insurance Company, LTD. v. Norfolk & Western Railway Company, 172 F.3d 44, (4th Cir. 1999)(Unpublished Opinion, at p. 4)(same); Murphy v. County of Yavapai, Slip Copy, 2006 WL 2460916, at p. 5 (D. Az., 2006)("Courts thus may consider hearsay evidence contained in an expert report or affidavit where the expert could later present that evidence through direct testimony, i.e. in a form that would be admissible at trial.")(internal quotes omitted).

It is generally not the purpose of expert reports to assert the truth of the things and reasons used by the expert to arrive at his conclusion. The Pearson Report will not be offered for that purpose. The purpose of putting the Pearson Report in evidence is simply to explain, for the benefit of the Court, the things and reasons which led the plaintiff's expert to his conclusions. Expert opinions are routinely admitted into evidence for that purpose. The Pearson Report will serve a secondary function of assisting the Court in navigating the very broad landscape of facts in this case. In this proceeding there is no concern that an unsophisticated jury might be confused or influenced by any facts or data in the report. This Court is fully capable of reading the report knowing that the facts and data referenced in the report are presented only to explain how the expert arrived at his conclusions. The responsibility for proving facts will rest with Roxco's fact witnesses, not its expert's report. The Government's fallback theory of inadmissibility because of hearsay is wrong, and it should get the short shrift it deserves. It should be rejected.

**II. Attribution of Specific Delay to Specific Errors and Omissions**

In its Reply the Government attempted to give the Court the impression that Roxco's expert, David Pearson, had indicated in his deposition testimony that he could not segregate specific delays according to the different categories of contract violations shown in the Pearson Report. The Government's Reply, at page 18, states that, "Mr. Pearson testified that the delay analysis upon which the Pearson report is based does not permit the attribution of specific delay to specific alleged errors and omissions." In an attempt to bolster that erroneous statement the Government quoted, at page 19 of the Reply, one question and answer from Mr. Pearson's deposition. The quoted segment is:

> Q. What percentage of the costs here are attributable to the government's provision permitting the use of No. 3 lumber? Can that be quantified?
> A. No. I can't -- I can't separate the cost of each one of these issues separately. Just the cost records won't allow it to be done. But what we can do is see the enormous amounts of money that were spent, and we can see from the records that has -- and we quoted one daily diary where they said they culled 4,000 studs.

Using this question and answer the Government represented in its Reply that if any of the Government's objections are sustained the Court will be left unaided in its attempt to assess the delays attributable to different items. That is not correct, and the Government's Reply was misleading on the point. The deposition question immediately preceding the question quoted by the Government was:

> Q. Now, the problems that Roxco experienced in regards to lumber, what percentage of those problems are attributable to what you characterize as dimensional framing?
> (page 10 of Reply exhibit, pages 190 - 91 of deposition transcript)

The next question posed was the one quoted by the Government in its Reply:

> Q. What percentage of the costs here are attributable to the government's provision permitting the use of No. 3 lumber? Can that be quantified?

Viewing the questions in sequence makes it plain that the question quoted by the Government was asked of Mr. Pearson in the context of the lumber, or wood framing, component of the delay claim only. Mr. Pearson was saying merely that for the wood framing component of the delay claim he cannot state a certain percentage of delay for the dimensional framing component and a separate certain percentage of delay for the grade of lumber component. He was not, as the Government's Reply implies, stating that Roxco cannot attribute specific delays to separate categories of events which caused delay, nor was he stating that specific delays cannot be attributed to specific errors and omissions. To the contrary, the Pearson Report separates the categories of events which caused delays. The Report segregates specific delays by specific categories of errors and omissions, and the additional costs to Roxco in each category are shown separately.

The Government does not argue that an inability to tie each precise error and omission to a precise quantum of delay would foreclose Roxco's claim. The Government argues instead that the Court should strike the Pearson Report because calculating damages will be more complicated if any separate part of the Report is not allowed in evidence. The Government did not cite any authority for its position. The reality is that it is not uncommon that contractors are unable to precisely tie each error or omission to a precise delay. In Kirchdorfer, Inc. v. United States, 14 Cl.Ct. 594, 607 (1988), it was explained that "a contractor is not required to show the amounts of increased costs attributable to breach by segregating those costs attributable to the breaches. Contractors rarely keep books in such fashion." (internal quotes omitted) Roxco did not keep its books in such a fashion.

This project was too large, and the separate errors and omissions were too many, to possibly list each specific error and omission and assign a specific delay to each. Grouping

delays by category is the only practical way to approach the proof of damages in this proceeding. Absolute precision regarding delays on a specific error or omission basis is not necessary, and will rarely be shown in a project of this magnitude. As the Kirchdorfer opinion teaches, "the lack of certainty as to the amount of damages should not preclude recovery." *Id*., at 606. Roxco and its expert have produced a concise and well documented catalogue of delays caused by the Government. The costs and damages to Roxco as a result of those delays are formatted in a manner that will greatly aid this Court in its consideration of this action.[1] The Government has presented its Motion In Limine as a device calculated to assist the Court. That is clearly not correct. The Motion is nothing more than an attempt to impede the progress of this action toward trial. The Motion should be denied in its entirety.

**III. Reliable Principles and Methods**

There is one additional item that the Government raised for the first time in its Reply which Roxco feels compelled to very briefly address in this Sur-Response. In its Reply the Government did not directly mount a Daubert challenge to Roxco's experts (Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 709 (1993)), but it did, at page 4 of its Reply, highlight the "reliable principles and methods" language of Rule 702. The Government also mentioned the Court's gate-keeping function in that regard. The Government's argument is that the Pearson Report impermissibly incorporates legal conclusions, and the incorporation of the legal conclusions is tantamount to using unreliable principles and methods in violation of Rule 702. This is not what the "reliable principles and methods" requirement of Rule 702 is designed to address, and the Government presented no authority for that proposition.

[1] Volume 3 of the Pearson Report contains Section L, "Claim Pricing," which discusses Roxco's costs and damages in narrative form and with exhibits. For the Court's benefit, a copy of the Summary of Claim Pricing as presented in the Report is attached to this brief as Exhibit "1".

Without going into unnecessary detail, it is established beyond need of recitation of authority that the "reliable principles and methods" language of Rule 702 is designed to rid the federal courts of junk science. The critical path analysis contained in the Pearson Report is standard fare for disputes of this nature.[2] Courts have recognized that the type of analysis contained in the Pearson Report is not junk science. See, Iacobelli Construction, Inc. v. County of Monroe, 32 F.3d 19, 25 (2nd Cir. 1994)(construction consultant analysis of site conditions, contract documents, and project results are typically used and accepted in construction-litigation cases). The Government's reference to "reliable principles and methods" is fluff. The Pearson Report presents no Rule 702 "reliable principles and methods" issue.

**Conclusion**

For the reasons stated in Roxco's original Response and in this Sur-Response, the Government's Motion in Limine should be denied.

Dated: February _____, 2007.

Respectfully submitted,

**ROXCO, LTD**

by: _/s/ E. Stephen Williams__
E. Stephen Williams
Mississippi State Bar #7223

YoungWilliams P.A.
2000 AmSouth Plaza
Post Office Box 23059

---

2 As part of its investigation of the project, the Pearson Report utilizes a methodology known as the "As Built Schedule Analysis," which is one of the most commonly used methods for analyzing construction delay claims. See, Bramble and Callahan, Construction Delay Claims, 3rd Ed. 2000, § 11.07.

Jackson, Mississippi 39225-3059
Telephone: (601)948-6100
Facsimile: (601)355-6136
steve.williams@youngwilliams.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of February, 2007, a copy of the foregoing Plaintiff's Response to Defendant's Reply Regarding Defendant's Motion in Limine was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

DATED: February 15, 2007.

____/s/ E. Stephen Williams_____

# SUMMARY OF CLAIM PRICING

| | | | |
|---|---|---|---|
| A. | Outstanding Contract Balance: | | $760,997 |
| B. | Unilateral Contract Modification P00011 | | $55,770 |
| | **SUBTOTAL:** | | **$816,767** |
| **CLAIM ITEMS:** | | | |
| C. | Time Related General Conditions: | | |
| | C.1 Extended Time-Related Field General Conditions: | $1,035,847 | |
| | C.2 Additional Time-Related Field General Conditions: | $336,854 | |
| D. | Engineered Fill | $339,656 | |
| E. | Building Foundations/Slabs | $492,508 | |
| F. | Wood Framing | $1,562,682 | |
| G. | Roofing | $269,278 | |
| H. | Exterior Finishes | $0 | |
| I. | Interior Finishes | $336,317 | |
| J. | Sitework | $55,727 | |
| K. | Building Turnover | $323,479 | |
| | **SUBTOTAL:** | **$4,752,348** | |
| | Home Office Overhead @ 3.6%: (See Note 1) | $171,085 | |
| | **SUBTOTAL** | **$4,923,433** | |
| | 10% Markup: | $492,343 | |
| | **TOTAL CLAIM:** | | **$5,415,776** |
| | **TOTAL DUE ROXCO:** | | **$6,232,543** |
| | Interest: | | **TBD** |

*Note 1:* *3.6% is the amount that the Government's auditor determined is appropriate.*

tabbies EXHIBIT 1