# In the United States Court of Federal Claims

No. 02-176C
(Filed: June 20, 2007)

*************************************

| | | |
|---|---|---|
| ROXCO, LTD., | * | |
| | * | |
| Plaintiff, | * | Government Contracts; Motion to Dismiss; |
| | * | RCFC 12(b)(1); Contract Disputes Act; |
| v. | * | 41 U.S.C. §§ 605(a), (c)(6); Government |
| | * | Claim; <u>Placeway</u>; <u>Engineered Demolition</u>; |
| THE UNITED STATES, | * | Air Force. |
| | * | |
| Defendant. | * | |

*************************************

<u>E. Stephen Williams</u>, YoungWilliams, P.A., Jackson, Mississippi, for plaintiff.

<u>John S. Groat</u>, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

Before the court is defendant's Motion for Partial Dismissal pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims. Plaintiff contractor filed suit in this court appealing the contracting officer's rejection of its claim for an equitable adjustment on its construction contract with the United States Department of the Air Force. Plaintiff later amended its Complaint, seeking, <u>inter alia</u>, the contract balance. Defendant seeks dismissal of that portion of plaintiff's Amended Complaint[1] requesting the outstanding contract balance. For the reasons stated below, defendant's Motion for Partial Dismissal is denied.

---

[1] Plaintiff's request for the contract balance is interwoven in counts two and three of the Amended Complaint.

# I. BACKGROUND[2]

The facts pertinent to defendant's Motion for Partial Dismissal are set forth in an earlier decision, Roxco, 60 Fed. Cl. at 40-42, and for the sake of clarity and context, are repeated here. On March 17, 1995, the United States Department of the Air Force ("Air Force") awarded Contract No. F16602-95-C-0013 ("Contract") to Roxco, Ltd. ("Roxco" or "plaintiff"). Roxco, 60 Fed. Cl. at 40. The Contract, as amended, provided for the construction of 172 new housing units at Barksdale Air Force Base in Shreveport, Louisiana, for a contract price of approximately $18.9 million. Id. Roxco was expected to complete construction by August 5, 1996. Id.

Disputes arose between Roxco and the Air Force over allegations of differing site conditions, constructive changes, government-caused delays, and breaches of contract. Id. From April 1995 to August 1998, Roxco's Vice President corresponded with Ms. Kathleen Lee, the contracting officer ("CO"), about these disputes. Id. at 40-41. The letters from Roxco reflect that Roxco sought additional payments and extensions of time while reserving its right to an equitable adjustment under the Contract. Id. at 41. The record before this court reflects that the CO did not respond to most of Roxco's concerns. Id. The completion date passed without Roxco having completed the project. Id. On February 14, 1998, the Air Force unilaterally modified the Contract and set February 18, 1998, as the new date for completion on the project. This date also passed without the Contract being completed. Id.

By letter dated October 16, 1998,[3] Roxco advised the Air Force that:

> [Roxco] is financially unable to perform or complete the performance of the work or comply with its contractual obligations on the above project, and accordingly, is in default under the above [C]ontract for the project. Roxco, Ltd. hereby irrevocably and voluntarily abandons and terminates the above construction Contract effective immediately.

Def.'s App. 1; see also Tr. 7 (noting that Roxco "performed this work from the time the [C]ontract was entered into in 1995 until it basically ran out of funds").

In a November 4, 1998 letter, the surety informed the Air Force that it would be taking over the Contract. Def.'s App. 2-3. The CO sent Roxco a show cause letter on November 23,

---

[2] These facts are derived mainly from the Amended Complaint ("Am. Compl."); the court's previous decision in Roxco, Ltd., v. United States, 60 Fed. Cl. 39, 40-42 (2004); the transcript from the March 2, 2007 oral argument held on defendant's motion ("transcript" or "Tr."); the appendix to defendant's motion ("Def.'s App."); and the exhibit to plaintiff's response to defendant's motion ("Pl.'s Ex.").

[3] Roxco sent a copy of this letter to its surety company, American Home Assurance Company ("surety"). Def.'s App. 1.

1998, stating that the Air Force was considering terminating the Contract for default and offered Roxco forty-eight hours to explain its failure to perform. Roxco, 60 Fed. Cl. at 41. Roxco did not respond. Id. Thus, the CO issued a Notice of Default Termination ("Notice") on December 21, 1998, but no specific sum was assessed against Roxco. Id. In the Notice, the CO stated that the government "terminates the subject contract" and "[c]onstruction of the Wherry Housing may be purchased against your account, and you will be held liable for any excess costs." Id.; Def.'s App. 4-5. The Notice provided that it was the final decision of the CO, and Roxco could appeal to the agency board of contract appeals within ninety days from the date it received the decision or to the United States Court of Federal Claims ("Court of Federal Claims") within twelve months of the date it received the decision. Roxco, 60 Fed. Cl. at 41. In the months that followed, Roxco's surety and the Air Force attempted to negotiate a takeover agreement, but these negotiations broke down, in part, due to the surety's insistence that the agreement explicitly reserve Roxco's claims. Id. The Air Force rejected all attempts by the surety to preserve any claims Roxco might have had against the government. Id. Although a takeover agreement was never executed due to the Air Force's and Roxco's surety's inability to agree to language regarding the preservation of Roxco's claim against the Air Force, on August 20, 1999, the surety completed the project. Id. at 41-42. The surety utilized Roxco's resources to complete the work. Tr. 7.

On March 30, 2001, Roxco submitted its request for equitable adjustment ("REA") to the CO pursuant to the Contract Disputes Act of 1978 ("CDA"), Pub. L. No. 95-563, 92 Stat. 2383 (codified as amended at 41 U.S.C. §§ 601-613 (2000)), in the amount of $7,840,497.40, for breach of contract. Roxco, 60 Fed. Cl. at 42; see also Am. Compl. ¶ 17. The REA requested that the Contract be modified to take into account such alleged government actions as defective documents, differing site conditions, abusive government conduct, and active interference by the government. Roxco, 60 Fed. Cl. at 42. On November 9, 2001, the CO notified Roxco that she had received the REA. The CO noted that Roxco had failed to respond to the show cause letter issued on November 23, 1998; as a result, the notice of default termination was issued on December 21, 1998. Id. Thus, the CO concluded, the Air Force was returning Roxco's REA without action because Roxco failed to appeal the default termination within the time provided by the CDA. Id.

Plaintiff appealed the CO's decision by filing its Complaint in the Court of Federal Claims on March 7, 2002. The Complaint sought: (1) equitable adjustment in the amount of $7,840,497.40; (2) breach of contract in the amount of $7,840,497.40; and (3) interest and litigation costs.

On June 10, 2002, defendant filed its Answer and Counterclaim, seeking liquidated damages in the amount of $909,791.00. On August 27, 2002, defendant filed a Motion to Dismiss the counterclaim without prejudice pursuant to Rule 41(a)(2) of the Rules of the United States Court of Federal Claims ("RCFC") because defendant wanted a final decision from the CO on the liquidated damages issue before proceeding in the Court of Federal Claims. On May 5, 2003, the court granted defendant's Motion to Dismiss the counterclaim without prejudice.

On May 15, 2003, the CO issued a final decision ("Final Decision") assessing liquidated damages against Roxco in the amount of $909,791.00.  Id.  The Final Decision notified Roxco that it could either appeal the decision to the agency board of contract appeals or to the Court of Federal Claims.  Def.'s App. 8-9.  Copies of the decision were sent to Roxco's attorney Mr. E. Stephen Williams ("Mr. Williams"), Roxco's surety, and Southeast Bonding & Insurance, Inc. Id.  Also on May 15, 2003, the CO sent a demand letter ("Demand Letter") to Roxco seeking payment of the liquidated damages.  Id. at 19-20.  The letter instructed Roxco how to request deferment of collection or payment of the government's claim for liquidated damages, how to pay the liquidated damages, and that interest would accrue on any amount not paid within thirty days from the date of the demand.  Id. at 19.  The letter further stated that: "Inasmuch as the remaining balance on the contract of $772,808.63 is insufficient, that amount will be retained and applied against the liquidated damages."  Id.  Copies of the Demand Letter were also sent to Mr. Williams, Roxco's surety, and Southeast Bonding & Insurance, Inc.  Id. at 19-20.

On October 17, 2003, plaintiff filed its Amended Complaint in this court seeking: (1) equitable adjustment for changes and differing site conditions under the Contract in the amount of $7,840,497.40; (2) the outstanding contract balance for breach of contract in the amount of $772,808.63; (3) interest and litigation costs from and after the date the CO received the REA, in addition to the interest on the contract balance; and (4) reversal of the liquidated damages decision, or in the alternative, an award of additional damages that "exceed or offset such liquidated damages."  Am. Compl. ¶¶ 24-30.  On October 20, 2003, defendant filed its Amended Answer and Counterclaim, seeking liquidated damages in the amount of $909,791.00, plus interest and costs.  On November 4, 2004, Roxco filed its response to defendant's counterclaim.

Plaintiff filed its Motion for Partial Summary Judgment on August 22, 2003.  Roxco, 60 Fed. Cl. at 40.  Defendant filed its Cross-Motion for Summary Judgment on August 27, 2003.  Id. The parties' motions raised several issues, all of which turned on whether Roxco's REA was timely.  Id. at 42.  On March 29, 2004, the court found that Roxco's complaint was "timely as a challenge to the contracting officer's final decision denying Roxco's monetary claim," id. at 40; thus, the court denied defendant's Cross-Motion for Summary Judgment.  Id. at 47.  Because Roxco's Motion for Partial Summary Judgment was essentially defensive or anticipatory of defendant's motion, the court granted Roxco's motion.  Id.

On November 9, 2006, defendant filed its Motion for Partial Dismissal ("defendant's motion" or "Def.'s Mot."), seeking to "dismiss for lack of jurisdiction that portion of plaintiff's . . . amended complaint that seeks the outstanding contract balance in the amount of $772,808.63."  Def.'s Mot. 1.  On December 8, 2006, Roxco filed its response to defendant's motion ("plaintiff's response" or "Pl.'s Resp.").  In its response, Roxco represents that it filed a separate certified claim ("supplemental claim")[4] with the CO for the contract balance on

---

[4]  Roxco notes in its response that while the text of the supplemental claim letter refers to the claim as a "Supplemental Verified Claim," the correct statutory term is "Supplemental

December 5, 2006.  Pl.'s Resp. 4-5; see also Tr. 10; Pl.'s Ex. 1.  Defendant filed its reply on December 26, 2006 ("defendant's reply" or "Def.'s Reply").  The court held oral argument on defendant's motion on March 2, 2007.  During argument, plaintiff raised an issue that previously had not been addressed by either party; namely, whether the defective certification section of the CDA, 41 U.S.C. § 605(c)(6), provides this court an additional basis for the exercise of this court's jurisdiction over plaintiff's request for the outstanding contract balance.  Tr. 10-11.  Plaintiff's counsel advised that defendant had been notified of this new theory, but did not object to the issue being raised for the first time at oral argument.  Id. at 10.  Because the parties were not fully prepared to discuss the issue since it had just been raised, additional briefing was necessary.  Id. at 11.  Thus, plaintiff filed a supplemental memorandum on March 13, 2007 ("plaintiff's supplemental memorandum" or "Pl.'s Supp'l Mem.");  defendant file a response on March 23, 2007 ("defendant's supplemental response" or "Def.'s Supp'l Resp.");  and plaintiff's reply was filed March 29, 2007 ("plaintiff's supplemental reply" or "Pl.'s Supp'l Reply").

## II.  LEGAL STANDARDS

### A.  Jurisdiction

Pursuant to the Tucker Act, the Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1) (2000).  The Tucker Act, however, is "'only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages.'"  United States v. Mitchell, 445 U.S. 535, 538 (1980) (quoting United States v. Testan, 424 U.S. 392, 398 (1976)).  Therefore, in order to come within the jurisdictional reach of the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages.  See Todd v. United States, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act.");  see also Roth v. United States, 378 F.3d 1371, 1384 (Fed. Cir. 2004) ("Because the Tucker Act itself does not provide a substantive cause of action, . . . a plaintiff must find elsewhere a money-mandating source upon which to base a suit.");  Kahn v. United States, 201 F.3d 1375, 1378 (Fed. Cir. 2000) ("[T]he plaintiff 'must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.'" (quoting James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998))).

Under the Tucker Act, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such

Certified Claim."  Pl.'s Resp. 4 n.7.  Roxco asserts that the "difference in wording is meaningless," because the letter contains the required certification.  Id.

claim first accrues." 28 U.S.C. § 2501.  A claim accrues "'when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.'" Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1455 (Fed. Cir. 1997) (quoting Brighton Vill. Assocs. v. United States, 52 F.3d 1056, 1060 (Fed. Cir. 1995)).

## B.  Motion to Dismiss - RCFC 12(b)(1)

A challenge to the "court's general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion." Palmer v. United States, 168 F.3d 1310, 1313 (Fed. Cir. 1999); see also RCFC 12(b)(1).  Subject matter jurisdiction may be challenged at any time by the parties, by the Court sua sponte, or on appeal. Gen-Probe Inc. v. Vysis, Inc., 359 F.3d 1376, 1379 (Fed. Cir. 2004).  When deciding a motion to dismiss, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); see also Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (noting that a court should consider the facts alleged in the complaint to be correct).

Plaintiff, however, bears the burden of establishing jurisdiction by a preponderance of the evidence. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question[,] it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction.").  A plaintiff need only set forth a prima facie showing of jurisdictional facts to survive a motion to dismiss. Raymark Indus., Inc. v. United States, 15 Cl. Ct. 334, 338 (1988).  When examining jurisdiction, matters outside the pleadings may be considered. Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993).

## III.  DISCUSSION

## A.  The Contract Disputes Act

The United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941).  Any waiver of sovereign immunity must be unequivocally expressed and may not be implied. United States v. King, 391 U.S. 1, 4 (1969). The CDA constitutes such a waiver, and the court must not "expand [the government's] liability beyond that which was explicitly consented to by Congress." Fid. Constr. Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir. 1983).

The CDA grants this court jurisdiction over claims between contractors and the government, involving "any express or implied contract for . . . the procurement of property, other than real property in being." 41 U.S.C. § 601(a)(1).  The CDA mandates that "[a]ll claims by a contractor against the government shall be in writing and shall be submitted to the contracting officer for a decision." Id. § 605(a).  For claims greater than $100,000.00:

> [T]he contractor shall certify that the claim is made in good faith, that the supporting
> data are accurate and complete to the best of his knowledge and belief, that the
> amount requested accurately reflects the contract adjustment for which the contractor
> believes the government is liable, and that the certifier is duly authorized to certify
> the claim on behalf of the contractor.

Id. § 605(c)(1).  A claim by a contractor against the government or a claim by the government against a contractor, under the CDA, must be "submitted within 6 years after the accrual of the claim."  Id. § 605(a).

While the statute does not define the term, the Federal Acquisition Regulations ("FAR")[5] define "claim" as "[1] a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain . . . ."  48 C.F.R. § 2.101 (2006); see also Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1576 (Fed. Cir. 1995) (stating that a claim must request a "sum certain" or other form of relief).  Additionally, the claim does not necessarily have to be "submitted in any particular form or use any particular wording."  Contract Cleaning Maint., Inc. v. United States, 811 F.2d 586, 592 (Fed. Cir. 1987).  The United States Court of Appeals for the Federal Circuit ("Federal Circuit") has further explained that "[a]ll that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim."  Id.  In essence, the court must evaluate each factual situation as a whole, and based on a "common sense analysis," determine whether a valid CDA claim has arisen. Transamerica Ins. Corp. v. United States, 973 F.2d 1572, 1579 (Fed. Cir. 1992); see also Kalamazoo Contractors, Inc. v. United States, 37 Fed. Cl. 362, 368 (1997) (noting that in some circumstances, "'a series of letters can be read together to comprise a clear and unequivocal statement giving the contracting officer notice of the basis for the contractor's claim.'"  (citation omitted)).

Within sixty days of receiving a certified claim in excess of $100,000.00, the contracting officer shall either "issue a decision" or "notify the contractor of the time within which a decision will be issued."  41 U.S.C. § 605(c)(2).  The contracting officer's decision "shall be issued within a reasonable time," accounting for "such factors as the size and complexity of the claim and the adequacy of the information in support of the claim provided by the contractor."  Id. § 605(c)(3).  "The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor.  The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided" in the CDA.  Id. § 605(a).  Further, if a contracting officer does not issue a decision on the claim within the period mandated, the claim "will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim . . . ."  Id. § 605(c)(5).  However, the contracting officer has no obligation to issue a final decision of a

---

[5] The FAR are codified at 48 C.F.R. chs. 1-99.

claim in excess of $100,000, that is not certified under 41 U.S.C. § 605(c)(1), if within sixty days of receiving the claim, the contracting officer notifies the contractor why "any attempted certification was found to be defective."  Id. § 605(c)(6).  A defect in the certification:

> [S]hall not deprive a court or a decision by an agency board of contract appeals jurisdiction over that claim.  Prior to the entry of a final judgment by a court or a decision by an agency board of contract appeals, the court or agency shall require a defective certification to be corrected.

Id.

A CDA claim, whether made by the government or the contractor, must be submitted to the contracting officer for a final decision before it can be appealed to the Court of Federal Claims.[6]  James M. Ellett Constr. Co. v. United States, 93 F.3d 1537, 1542-43 (Fed. Cir. 1996); Sharman Co. v. United States, 2 F.3d 1564, 1568-69 (Fed. Cir. 1993); see also 41 U.S.C. §§ 605(a), 609(a).  "[A]s long as what the contractor desires by its submissions is a final decision, that prong of the CDA claim test is met."  Transamerica Ins. Corp., 973 F.2d at 1576.  Once the contracting officer issues the final decision, that determination "on the claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized" by the CDA.  41 U.S.C. § 605(b).  After the contracting officer issues a final decision on a claim, the contractor may either appeal to the appropriate board of appeals or to the Court of Federal Claims.  Id. §§ 607(d), 609(a)(1); see also James M. Ellett Constr. Co., 93 F.3d at 1541-42 (noting that under the CDA, jurisdiction in the Court of Federal Claims requires both a valid claim and a final decision upon that claim by a contracting officer).  This court has jurisdiction if the claim is appealed to this court within twelve months of the contracting officer's final decision.  41 U.S.C. § 609(a).

As noted above, the Court of Federal Claims has jurisdiction over an appeal of a contractor's denied claim if that claim was certified when submitted.  James M. Ellett Constr. Co., 93 F.3d at 1545.  However, a government claim does not require certification.  Placeway Constr. Corp. v. United States, 920 F.2d 903, 906 (Fed. Cir. 1990).  The CDA offers little guidance regarding what constitutes a valid government claim.  J & E Salvage Co. v. United States, 37 Fed. Cl. 256, 262 (1997).  The Act provides: "All claims by the government against a contractor relating to the contract shall be the subject of a decision by the contracting officer."  41 U.S.C. § 605(a).  The Federal Circuit has defined a government claim "as a claim seeking incidental and consequential damages for [a contractor's] alleged breach of the contract . . . ."  Placeway, 920 F.2d at 906 n.1.  In addition, the Federal Circuit's decision in Placeway provides that a decision on a government claim, which is adverse to the plaintiff contractor, serves as a

---

[6]  As noted above, if a contracting officer does not issue a decision on the claim within the period mandated, the claim is deemed "a decision . . . denying the claim and will authorize the commencement of the appeal or suit on the claim . . . ."  41 U.S.C. § 605(c)(5).

basis for the contractor's appeal in this court even in the absence of a contracting officer's final decision on the contractor's certified claim. Id. at 906-07.

## B. Roxco's Request for the Outstanding Contract Balance[7]

In its motion, defendant asserts that because plaintiff did not file a certified claim with the CO for the contract balance, this court lacks jurisdiction over plaintiff's demand for that sum. See Def.'s Mot. 1; Tr. 4. Defendant notes that when plaintiff submitted its five-volume REA on March 30, 2001, "about two years and three months" after its default, "[n]owhere in the REA does Roxco claim entitlement to the remaining contract balance." Def.'s Mot. 3. Additionally, defendant argues that the Final Decision and the Demand Letter "did not address Roxco's or the surety's entitlement or right to the immediate payment of the contract balance - only that the balance would be 'retained and applied against the liquidated damages.'" Id. at 5 (quoting the Demand Letter). Thus, defendant asserts, plaintiff's request for the contract balance with interest must be dismissed because such request "was never submitted to the contracting officer [and is] not the subject of a contracting officer's final decision." Id. at 7; see also Tr. 4-5.

In its response to defendant's motion, plaintiff contends that at the time it submitted its REA to the CO in 2001, it was impossible to know the contract balance. See Tr. 6-8, 17-18; Pl.'s Resp. 3 n.3; Pl.'s Supp'l Mem. 5. According to plaintiff, it was not until the CO issued her May 15, 2003 Final Decision that the contract balance could be determined. Tr. 6-8, 17-18; Pl.'s Resp. 3 n.3; Pl.'s Supp'l Mem. 5. Plaintiff also argues that it was not until May 15, 2003, that the CO ruled on the liquidated damages issue; thus, it could not have asserted a claim for the balance at an earlier date. Tr. 6-8, 17-18; Pl.'s Supp'l Mem. 5. Plaintiff advances three alternative theories to support this court's exercise of jurisdiction. First, plaintiff argues that under the Federal Circuit's decision in Placeway, the CO's Final Decision and Demand Letter should be viewed as one document; thus, plaintiff's demand for the contract balance is an appeal of the final decision by the CO on a government claim that determined the existence and disposition of the monies remaining on the contract. Tr. 6-9; Pl.'s Resp. 3-4. Second, plaintiff argues that its December 5, 2006 supplemental claim for the contract balance satisfies the CDA's requirements. Tr. 10; Pl.'s Resp. 4-5. According to plaintiff, because the CO failed to issue a decision on its supplemental claim, that claim is deemed denied under 41 U.S.C. § 605(c)(5). Tr. 10. Plaintiff urges this court to "consider the present appeal as the appeal of the denial of the provisional certified claim and proceed without pause." Pl.'s Supp'l Mem. 7. Finally, and in the alternative, plaintiff proposes that in the event that the court finds a defect in the certification of plaintiff's claim for the contract balance, the court may cure the defect by utilizing the defective certification provision found in 41 U.S.C. § 605(c)(6) ("§ 605(c)(6)"). See Tr. 10-11; Pl.'s Supp'l Mem. 7-8.

---

[7] This Opinion and Order decides only the jurisdictional issue and is not a merits determination of Roxco's request for the contract balance.

Regarding plaintiff's assertion that the holding in Placeway is applicable to the case sub judice, defendant contends that because Placeway is factually dissimilar, plaintiff's reliance upon this case is "mistaken."  Def.'s Reply 2.  Next, in response to plaintiff's supplemental claim theory, defendant argues that the supplemental claim "has no legal effect and fails to cure the jurisdictional defects in Roxco's claim for the contract balance."  Id.  Defendant asserts that once plaintiff filed a claim for the contract balance in this court, the United States Department of Justice, not the CO, had the exclusive authority to act.  Id. at 8 (discussing Sharman, 2 F.3d at 1571).  Consequently, defendant argues that the moment the instant action was filed, the CO was divested of all authority to address plaintiff's claims.  Id.  As to plaintiff's § 605(c)(6) argument, defendant contends that provision applies only in those circumstances in which a contractor submits a claim to the contracting officer, but the certification is later determined to be defective.  Def.'s Supp'l Resp. 4.  Defendant argues that § 605(c)(6) does not apply to the facts presented in this case because plaintiff did not submit a claim to the CO for the contract balance before seeking that amount in this court.  Id. at 1-2.  According to defendant, if no claim was ever submitted to the CO for decision, then there is no defective certification that can be cured.  Id.

**1.  Is Roxco's Request for the Contract Balance an Appeal of the CO's Final Decision on a Government Claim?**

As noted above, Roxco amended its Complaint to include a request for the remaining contract balance in the amount of $772,808.63, plus interest and costs.  Am. Compl. ¶¶ 27-29.  Roxco does not dispute that initially it did not submit a "separate certified claim [to the contracting officer] for the contract balance."  Pl.'s Resp. 5.  In fact, Roxco emphasizes that while it knew it "had not been paid in full," it could not have made an accurate claim for the contract balance until it received the Demand Letter from the CO, outlining the "setoff or liquidated damages."  See Tr. 18; Pl.'s Resp. 3 n.3.  Roxco, however, contends that because the government seeks to collect liquidated damages by offsetting those damages against the contract balance, the instant case "presents a final decision on a liquidated damages claim prosecuted by the Government," or a "Government claim."  Pl.'s Resp. 2; see also Tr. 17.  According to Roxco, read together, the Demand Letter and the Final Decision "are truly one decision" that decided the "existence, amount, and disposition of [the] contract balance."  Pl.'s Resp. 3; see also Tr. 8-9.  Thus, plaintiff contends, the "antecedent existence or non-existence of a certified claim by Roxco for the contract balance is immaterial."  Pl.'s Resp. 3.  Conversely, defendant argues that the court must dismiss plaintiff's request for the outstanding contract balance because plaintiff failed to submit a claim to the CO; therefore, plaintiff failed to comply with the CDA's requirements.  See Tr. 4.

**a.  Placeway Construction Corporation v. United States**

To support its argument that its request for the contract balance is an appeal of a government claim and therefore, properly before this court, Roxco relies upon the Federal Circuit's ruling in Placeway Construction Company v. United States, 18 Cl. Ct. 159 (1989), affirmed in part by, Placeway, 920 F.2d 903.  Pl.'s Resp. 3-4.  In Placeway, the contractor

completed work on a government contract after the completion date specified in the contract had
expired. 920 F.2d at 905. Although Placeway submitted a voucher to the contracting officer on
January 21, 1985, requesting payment of the remaining contract balance, its request was rejected.
Id. Then, on May 28, 1986, Placeway submitted a written demand to the contracting officer
seeking payment of the contract balance, and monies for adjustments for additional work and
expenses allegedly incurred because of government delay. Id. None of Placeway's claims was
certified. Id. On September 4, 1986, the contracting officer denied Placeway's demands and
determined that the contract balance would be withheld because Placeway had failed to complete
the contract in a timely manner. Id. Thus, the contracting officer used the contract balance to set
off cost overruns caused by Placeway's inability to complete its work on time as described in the
contract. Id. Specifically, the government anticipated its obligation to make payments to other
contractors working on related projects that had allegedly suffered delay costs because of
Placeway's inability to complete performance in a timely manner. Id. The contracting officer's
letter did not set forth the precise amount to be set off since the contracting officer was awaiting
claims from the other contractors. Id. Placeway filed suit in the United States Claims Court
("Claims Court") (a predecessor to the Court of Federal Claims), seeking, inter alia, the contract
balance and an equitable adjustment. Id.

The Claims Court found that the government had asserted a right of setoff against
Placeway, which the court deemed "a government claim." Placeway, 18 Cl. Ct. at 164.
However, the Claims Court found that it lacked jurisdiction over Placeway's claims because the
contracting officer had not issued a final decision. Id. at 165. Because the September 4, 1986
letter did not contain language stating it was a final decision and did not contain the "'appeal
rights' language required by the regulation to be included in any 'final decision,'" the Claims
Court held the letter did not constitute a final decision from which Placeway could appeal. Id.

On appeal, the Federal Circuit examined two aspects of the Claims Court's decision in
Placeway regarding the contract balance. 920 F.2d at 906-07. First, the Federal Circuit agreed
with the Claims Court "that the set off asserted is a government claim." Id. at 906. The Federal
Circuit defined a government claim "as a claim seeking incidental and consequential damages for
Placeway's alleged breach of the contract, in particular failure to complete performance on the
date set in the contract." Id. at 906 n.1. The Federal Circuit also agreed with the Claims Court
that government claims do not require certification. Id. at 906.

Second, the Federal Circuit explained what constitutes a contracting officer's final
decision. Id. at 906-07. In its ruling vacating the Claims Court's dismissal of the contract
balance claim, id. at 907, the Federal Circuit reasoned that the contracting officer's September 4,
1986 letter served "effectively [as a] final decision on the government claim" when the
contracting officer "declined to pay Placeway the balance due on the contract." Id. at 906. The
decision focused on the fact that the contracting officer's "decision . . . determine[d] both
liability and damages." Id. at 907. The Federal Circuit's ruling noted that the contracting officer
found Placeway liable because of delayed performance and "effectively ruled that damages
would be the contract balance." Id. The Federal Circuit reiterated its precedent that "[b]oth

-11-

issues of liability and of damages should usually be resolved before judicial review is sought." Id. at 906; see also Teller Envt'l Sys. v. United States, 802 F.2d 1385, 1388-89 (Fed. Cir. 1986) (holding that a contracting officer's decision is final if it resolves the issues of liability and damages). Further, since the contracting officer's decision was adverse to Placeway, the Federal Circuit explained that Placeway "could properly appeal to the Claims Court." 920 F.2d at 907. The Federal Circuit concluded that the September 4, 1986 letter served as a final decision on the government's claimed setoff, even though the contracting officer issued no distinct, formal written decision on the claimed setoff and reserved the power to redetermine the precise amount of the setoff in the future. Id. at 906-07; id. at 907 ("The decision is no less final because it failed to include boilerplate language usually present for the protection of the contractor."); see also Alliant Techsystems, Inc. v. United States, 178 F.3d 1260, 1267 (Fed. Cir. 1999) ("A letter can be a final decision under the CDA even if it lacks the standard language announcing that it constitutes a final decision."). The Federal Circuit in Placeway noted that "implicit to a CO decision to award specified damages is a decision imposing liability, whether or not liability is explicitly discussed." 920 F.2d at 907 n.2.

### b. Application of Placeway to the Case Sub Judice

### i. Was the Liquidated Damages Claim a "Government Claim"?

As explained above, the CDA requires that "[a]ll claims by the government against a contractor relating to the contract shall be the subject of a decision by the contracting officer." 41 U.S.C. § 605(a). Here, the government filed a claim with the CO for liquidated damages against Roxco pursuant to the terms provided in the Contract. The CO then issued a final decision based on this claim, finding that the Air Force was entitled to liquidated damages because Roxco breached the Contract. Def.'s App. 8-9; see also Def.'s Mot. 7 (admitting that the CO issued a "final decision for a Government claim" regarding liquidated damages). Hence, the liquidated damages award was the direct result of a claim by the government against Roxco.

The CDA also requires the contracting officer to "issue his decisions in writing, and [to] mail or otherwise furnish a copy of the decision to the contractor." 41 U.S.C. § 605(a). Further, the CO's "decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter . . . ." Id. In the case sub judice, the CO's decision was in writing, and it explained the reasons for the decision and informed Roxco of its rights. See Def.'s App. 8. The Final Decision stated that the CO was assessing liquidated damages against Roxco because of delayed performance at a "daily rate of $131.00 plus $15.00 x the number of housing units not complete began on 26 Feb[ruary] 1998 as there was not more time allowed or justified on this contract." Id. Attached to the Final Decision, the CO provided a spreadsheet detailing the damages, which totaled $909,791.00. Id. at 10-18.

However, unless the contract balance that was set off by the contracting officer was part of a final decision, this court lacks jurisdiction to entertain plaintiff's action to recover the

withheld amount of the contract balance at issue.  See Teller Envt'l Sys., 802 F.2d at 1390 (holding that the resolution of both liability and damages is a prerequisite to judicial review).

**ii. Did the CO Issue a Final Decision Regarding the Disposition of the Contract Balance?**

Defendant states that the CO's Final Decision for the government claim dated May 15, 2003, established the government's right or claim to liquidated damages in the amount of $909,791.00.  Def.'s Mot. 7.  For example, defendant notes that the Final Decision and Demand Letter did not determine Roxco's or the surety's right to payment of the contract balance, nor did the Final Decision and Demand Letter determine whether Roxco was entitled to interest on the contract balance.  Id. at 7-8.  Instead, defendant argues that the CO's Demand Letter "simply advised Roxco of the amount of the remaining balance, the fact the government's claimed liquidated damages exceeded the balance, and the balance was 'retained and applied against the liquidated damages.'"  Id. at 8 (citing the CO's May 15, 2003 Demand Letter).

Further, defendant asserts that the holding in Placeway is inapplicable here because, unlike the plaintiff in Placeway, Roxco never submitted so much as an invoice to the CO requesting payment.  Def.'s Reply 5-6.  Defendant additionally argues that Placeway can be distinguished because "it was undisputed that the contractor [in Placeway] was entitled to the contract balance" since the contractor completed the work.  Tr. 4-5; see also Def.'s Reply 2.  Here, defendant points out, it is undisputed that Roxco did not complete the work; rather, Roxco's surety completed work on the Contract after Roxco notified the Air Force that it was abandoning the project on October 16, 1998.  Def.'s Reply 2, 5.

Not surprisingly, Roxco advances a contrary view.  Roxco asserts that this case presents a final decision on liquidated damages, which encompasses the disposition of the contract balance.  Pl.'s Resp. 2.  Arguing that the Final Decision and the Demand Letter are one and the same, Roxco contends that the final decision on the government claim includes "as an integral and indispensable component thereof, a final decision regarding the existence, amount, and disposition of a contract balance."  Id.; see also Pl.'s Supp'l Mem. 5-6.  Accordingly, Roxco alleges in its Amended Complaint that its request for the contract balance is an appeal of the CO's final decision regarding the liquidated damages award and the contract balance.  Pl.'s Resp. 3; Pl.'s Supp'l Mem. 5-6.

Although true that the contract balance was known in Placeway, the contractor's entitlement to the sum was in dispute, and the government claimed the delay in completion negatively impacted other projects, resulting in cost overruns.  Placeway, 920 F.2d at 905.  Moreover, the Federal Circuit's opinion did not turn on who completed the contract, but rather focused on whether the contracting officer's decision decided both liability and damages, even if liability was not explicitly mentioned.  Id. at 907 & n.2.  Applying the rule in Placeway, this court finds that the Demand Letter and Final Decision constitute one document granting a government claim against Roxco.  Just as the May 15, 2003 Final Decision determined explicitly that the government was entitled to liquidated damages pursuant to the Contract, the CO would

-13-

not have awarded liquidated damages to the government unless she also determined Roxco was liable.[8]  Liability is the predicate for damages.  Similarly, the May 15, 2003 Demand Letter was predicated on Roxco's liability because the CO decided that neither Roxco nor its surety was entitled to the contract balance.  Consequently, both May 15, 2003 documents must be read together as a "final decision" because, combined, the documents determine liability and damages.  Finally, similar to <u>Placeway</u>, the CO's decision to set off the damages against the contract balance was adverse to Roxco; thus, Roxco properly appealed these adverse decisions to this court.

The decision in <u>Placeway</u> is further instructive here, because the Federal Circuit deemed the contracting officer's letter a "final decision" even though the letter was not captioned as such and did not contain boilerplate language regarding appeal rights.  920 F.2d at 907.  In the instant case, the Demand Letter states that the Air Force will set off the liquidated damages award against the contract balance, but the letter does not contain boilerplate language regarding Roxco's right to appeal.  As <u>Placeway</u> explains, a contracting officer's "decision is no less final because it failed to include boilerplate appeal rights language usually present for the protection of the contractor."  <u>Id.</u>  In this case, it is clear that although the Demand Letter sent to Roxco did not contain the boilerplate language, the Demand Letter was dated the same day as the Final Decision, which did contain the boilerplate language.  Additionally, the Final Decision and the Demand Letter both discuss the liquidated damages award.  Thus, just as in <u>Placeway</u>, the CO's decision in the Demand Letter to Roxco was no less final because it did not contain such boilerplate appeal rights language.

## 2.  Is Roxco's Supplemental Claim Timely?

In the alternative, plaintiff states that it has reserved its "right to prosecute its claim for release of the contract balance" by submitting a supplemental claim to the CO on December 5, 2006.  Pl.'s Resp. 1; Pl.'s Ex. 1.  On that date, Roxco sent a letter to the CO, which Roxco asserts serves as a supplemental claim for the contract balance.  Pl.'s Resp. 4-5; Pl.'s Ex. 1.  In the supplemental claim, Roxco states that it first learned of a contract balance from the CO's May 15, 2003 Demand Letter, and that its consultant has determined the correct outstanding contract balance to be $760,997.00.  Pl.'s Ex. 1B.  Thus, the supplemental claim seeks this amount.  Pl.'s Ex. 1.  Roxco notes that it filed the supplemental claim as a precaution, and that "[u]nder the rule of law explained in <u>Placeway</u>, the [supplemental claim] is redundant and unnecessary."  Pl.'s Resp. 5.

In response, defendant argues that plaintiff's supplemental claim is "jurisdictionally defective" and "cures nothing."  Def.'s Reply 9.  Defendant emphasizes that once a claim is

---

[8]  Nothing in either May 15, 2003 document can be construed as an invitation to negotiate.  To the contrary, liability was determined and damages fixed, including the use of the contract balance as an offset to the government's damages.

pending before this court, the CO does not have jurisdiction over that claim.  Id. at 8 (referring to Sharman, 2 F.3d at 1571, and 28 U.S.C. §§ 516-520).

Although the court finds that the rule in Placeway allows Roxco to proceed with its claim for the contract balance, the court nonetheless addresses Roxco's supplemental claim argument. As noted earlier, before the Court of Federal Claims may review a claim, jurisdictional prerequisites must be met, including the prerequisite that a contractor file a "claim" with the CO and receive a final decision on the claim.  41 U.S.C. § 605(a); see, e.g., Sharman, 2 F.3d at 1569. Thus, once a "claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation."  Sharman, 2 F.3d at 1571 (referring to 28 U.S.C. §§ 516-520).  "That exclusive authority divests the contracting officer of his authority to issue a final decision on the claim."  Id.; see also Hughes Aircraft Co. v. United States, 209 Ct. Cl. 446, 465 (1976) (stating that under 28 U.S.C. §§ 516-520, the Department of Justice has a right to control matters pending in court).  Jurisdiction is determined "under the actual circumstances existing at the time a complaint is filed."  Sharman Co. v. United States, 24 Cl. Ct. 763, 769 (1991).

In the case sub judice, plaintiff's October 17, 2003 Amended Complaint includes a claim for the contract balance.  Plaintiff concedes that it did not file a claim for the contract balance with the CO prior to filing its supplemental claim on December 5, 2006.  Tr. 17-18; Pl.'s Resp. 3 & n.3; Pl.'s Supp'l Mem. 5.  However, plaintiff argues that the CO's failure to issue a decision on its supplemental claim is a "deemed denial" under the CDA; thus, plaintiff argues that the "Court should consider the present appeal as the appeal of the denial of the [supplemental claim] and proceed without pause."  Pl.'s Supp'l Mem. 7.  As Sharman instructs, the CO was divested of authority to rule on plaintiff's supplemental claim because the claim was pending before this court.  2 F.3d at 1571.  Thus, plaintiff's supplemental claim does not meet the jurisdictional prerequisite that a claim must be submitted to the CO before the Court of Federal Claims may assert jurisdiction over the claim; nor does plaintiff's supplemental claim serve as "an appeal of the denial" by the CO because the CO did not have authority to issue a decision regarding the supplemental claim.  Plaintiff's supplemental claim theory fails to meet the CDA's requirements that confer jurisdiction upon the Court of Federal Claims.

### 3.  Does § 605(c)(6) Cure Roxco's Failure to File a Certified Claim?

Section 605(c)(6) provides that "[a] defect in the certification of a claim shall not deprive a court or an agency board of contract appeals of jurisdiction over that claim"; thus, "[p]rior to the entry of a final judgment by a court or a decision by an agency board of contract appeals, the court or agency shall require a defective certification to be corrected."  41 U.S.C. § 605(c)(6). The terms "'[a] defect in the certification' and 'defective certification' include 'missing certifications when two or more claims not requiring certification are deemed by the court or board to be a larger claim requiring certification.'"  Engineered Demolition, Inc. v. United States, 60 Fed. Cl. 822, 829 (2004) (citation omitted).  The "fundamental purposes of the certification requirement have been to provide an accurate appraisal of the contractor's damages and thus encourage settlements and to discourage improper submissions by holding contractors liable for

fraudulent claims." <u>Engineered Demolition</u>, 60 Fed. Cl. at 827; <u>see also</u> <u>Medina Constr., Ltd. v.</u>
<u>United States</u>, 43 Fed. Cl. 537, 547 (1999).

In the alternative to the preceding arguments raised, plaintiff contends that "[i]f the Court
should conclude that Roxco's claim for the contract balance is presently defective, any deficiency
is easily curable under § 605(c)(6)."  Pl.'s Supp'l Mem. 7; <u>see also</u> Tr. 10-12.  Specifically,
plaintiff contends:

> [E]ven if it is determined that a separate certified claim on the specific issue of the
> contract balance is required, the absence of such a certification at the time the
> Government filed its motion is not a jurisdictional bar, and dismissal of the contract
> balance claim is not warranted or appropriate.  Instead, a finding that a certified claim
> is necessary would merely translate to a requirement that the contract balance be
> certified before a final judgment on the claim can be entered in this Court.

Pl.'s Supp'l Mem. 2.

To support its argument, plaintiff relies upon <u>Engineered Demolition</u> for the proposition
that "even the total absence of a certified claim is a curable and non-jurisdictional circumstance
unless the absence is the result of 'bad faith, fraud, or reckless and intentional disregard of the
statutory certification requirements.'"  <u>Id.</u> at 4 (citing <u>Engineered Demolition</u>, 60 Fed. Cl. at 827).
The contractor in <u>Engineered Demolition</u> submitted two separate claims that were not certified
because the contractor believed that certification was not necessary since neither claim exceeded
$100,000.00.[9]  60 Fed. Cl. at 824.  The Court of Federal Claims determined that the claims were
properly submitted separately, and "[t]he only consequence of the absence of certification in such
circumstances would be that the Court would require [the contractor] to certify the separate
claims before the Court issued its final decision, pursuant to 41 U.S.C. § 605(c)(6)."  <u>Id.</u> at 831.

<u>Engineered Demolition</u> is markedly different than the instant case.  Section 605(c)(6)
presupposes that a contractor has submitted a claim to a contracting officer with a defective
certification.  In the instant case, Roxco failed to meet the CDA's requirement of submitting a
claim to the CO prior to seeking the contract balance in the Court of Federal Claims.  A final
decision by a contracting officer is a jurisdictional prerequisite to litigation in this court.  <u>James</u>
<u>M. Ellett Constr.</u>, 93 F.3d at 1542-43; <u>Sharman</u>, 2 F.3d at 1568-69; <u>see also</u> 41 U.S.C. §§ 605(a),
609(a).  While § 605(c)(6) provides a cure for defective certification, this section does not
provide a cure for lack of certification; or as in the case <u>sub judice</u>, a cure for failing to submit a
claim to the CO prior to asserting the claim in the Court of Federal Claims.  41 U.S.C. §605(a)
(requiring that a claim be submitted to a contracting officer); 48 C.F.R. § 33.201 ("Failure to

---

[9]  One claim sought to recover $69,047.00, and the other claim sought to recover
$38,940.00.  <u>Engineered Demolition</u>, 60 Fed. Cl. at 823-24.  The Court of Federal Claims found
that the two claims were "separate and independent in nature, and because each is less than
$100,000.00, the certification requirement does not apply."  <u>Id.</u> at 831.

certify shall not be deemed to be a defective certification.");[10] see also Medina Constr., 43 Fed. Cl. at 547 (holding that the contractor had submitted a claim but because such claim lacked certification, the Court of Federal Claims could not exercise jurisdiction and § 605(c)(6) only applied to cases in which the certification was defective); Scan-Tech Sec., L.P. v. United States, 46 Fed. Cl. 326, 339-40 (2000) (same).

In addition to Engineered Demolition, plaintiff relies on Trafalgar House Construction, Inc. v. United States, 73 Fed. Cl. 675 (2006). Pl.'s Supp'l Mem. 4-5. However, Trafalgar House Construction involved a contractor that submitted a certified claim, albeit with defective certification, to the CO before proceeding to file suit in the Court of Federal Claims. 73 Fed. Cl. at 692-94. Hence, Trafalgar House Construction lends no support to plaintiff's argument.

It is clear that § 605(c)(6) has limited application to those circumstances in which a contractor has submitted a claim to the contracting officer, but the certification is defective. Here, no claim was submitted; thus, there is no defective certification to cure.[11]

_____

[10]   The Court of Federal Claims in Engineered Demolition held that section 33.201 of the FAR was:

> overbroad and invalid insofar as it would treat as jurisdictional defects those errors in certifications of claims of the types cited in the legislative history of Section 605(c)(6), including particularly "missing certifications when two or more claims not requiring certification are deemed by the court or board to be a larger claim requiring certification."

60 Fed. Cl. at 830 (citation omitted). That holding does not assist plaintiff in this case because Roxco failed to submit a claim for the contract balance; thus, the court need not address whether a nonexistent claim can have a defect in certification. Plaintiff suggests a metaphysical impossibility.

[11]   Plaintiff, in its supplemental reply brief, asserts that defendant's failure to address Engineered Demolition and Trafalgar House Construction in its supplemental response "speaks volumes." Pl.'s Supp'l Reply 2. While defendant did not directly address these two cases, defendant did respond to plaintiff's underlying argument. See generally Def.'s Supp'l Resp. Defendant made clear in its response that simply because § 605(c)(6) "provides for a cure for defective certification of contractor claims pre[v]iously submitted to a contracting officer does not in any way suggest that Roxco can proceed with its contractor claim, given its failure to submit this claim to the contracting officer." Id. at 1.

## IV.  CONCLUSION

For the reasons stated above, defendant's Motion for Partial Dismissal is DENIED.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge